JOSEPH H. TRAVIS, APPELLEE, v. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLANT.

FILED APRIL 16, 1915. No. 18056.

1. **Appeal:** TESTIMONY OF EXPERT. When, in an action for personal injuries, the attending physician is called as a witness and gives evidence, which is improper in form, as to the permanent character of the injuries complained of, the irregularity will be *held* not prejudicial, where the witness explains his answers by giving a clear and detailed explanation of the objectionable testimony, and other evidence in the case, standing alone, justifies the verdict.

2. **Trial:** INSTRUCTIONS. "The true meaning of instructions is to be determined, not by a separate phrase or paragraph, but by considering all that is said on each particular subject or branch of the case." *Lincoln Traction Co. v. Brookover*, 77 Neb. 221.

3. ———: REFUSAL OF INSTRUCTION. It is not error to refuse to give a requested instruction, when the court on its own motion gives to the jury the substance of the instruction requested.

APPEAL from the district court for Douglas county: CHARLES LESLIE, JUDGE. *Affirmed.*

*John L. Webster* and *W. J. Connell*, for appellant.

*Weaver & Giller, contra.*

MORRISSEY, C. J.

While alighting from one of defendant's cars, in the city of Omaha, plaintiff fell and sustained injuries, and brought this action to recover damages, alleging that the plaintiff had notified the conductor that he wished to alight from the car at Seventeenth and Cass streets, but, upon arriving at said point, the conductor failed to bring the car to a stop at its usual stopping place; that the car continued until it had passed at least 100 feet beyond its usual stopping place, when the plaintiff again asked the conductor to bring the car to a stop and permit him to alight. The car was then brought to a stop, and while plaintiff was in the act of alighting therefrom, but before he had sufficient time to do so, the defendant negligently and carelessly caused the car "to start suddenly with a jerk, and thereby threw plaintiff to the pavement," causing the injuries of which he complains.

The answer denies the allegations of the plaintiff's petition, and alleges that, as the car approached Seventeenth street traveling west, the conductor gave the signal for a stop at the next regular stopping place; that immediately thereafter the plaintiff stepped to the edge of the rear platform and down upon the step of the car; that the conductor warned the plaintiff not to alight until the car had stopped, but that plaintiff, in disregard of the warning, negligently stepped from the car to the street before the car had been brought to a stop; that the street was at that time covered with ice, making it especially dangerous to step from a moving car, and the plaintiff had full knowledge of this condition; that the car stopped in the usual way about ten feet beyond the point where the plaintiff stepped from the car to the street; and alleges that whatever injuries plaintiff received were due to his own negligence in stepping from the moving car before it had come to a stop. The case was tried to a jury, there was a verdict for the plaintiff, and defendant appeals.

The proof shows that in falling upon, or being thrown to, the pavement, plaintiff sustained a fracture of the el-

bow of the right arm, an injury to his back and hips, which is fully described in the testimony of Dr. Lee, hereinafter quoted, and a cut and bruise on the back of his head, which the doctor describes as: "It was simply a cut, but the trouble seemed to be more in the bone * * * than in the cut itself." Of this the doctor testified: "He complained of pain in the head, all through the head, particularly over the bone. * * * He complained of that a long time, even after the elbow and the skin had healed up and everything of that kind after he was up and around." The injury occurred March 13, 1912, and the trial was had in February, 1913. Plaintiff testified that he was still suffering much pain; that his arm was not so strong as before the injury; that his back still troubled him; that "if I will walk for very long at a time, an hour or more, I get an ache and pain in my hip and back, and I go and sit down." He testified to a pain in his head from time to time, and said he still had a roaring in his head and ear, and could not hear so well as before the accident. He was 42 years old, and prior to his injury had been earning $100 a month, or more, as a chauffeur, but he had not been able to work since the accident.

Complaint is made because the trial court permitted Dr. Lee, over the objections of defendant, to answer the following questions: "Q. Just tell the jury, the court and jury, Doctor, what is the probability of his ultimate recovery as to these injuries, especially to the arm and back and the head. * * * A. Well, it would be impossible for me to say whether they were permanent or not, any one of them; but they are injuries that could be permanent. Q. Just state now, Doctor, how the injury to the back could become a permanent injury. A. Well, the injury consisted in a wrenching and bruising of the muscles and ligaments and tendons, or muscles surrounding the spine and surrounding the muscles of the hips, and it would be impossible to say to what extent that would remain, and that was the reason I said it was impossible to state whether it would be permanent or not, but it would be liable to be on that account, because I couldn't

restore them to their former condition.   Q.   Now state,
Doctor, how about his arm—the injury to the arm.   Ex-
plain to the jury how that can be a permanent injury.
A.   Well, the arm could be injured to that extent for the
reason that every broken bone leaves more or less of a
weakness or defect in the bone which cannot be restored,
and it always leaves—affects the structures, muscles, etc.,
surrounding the part that is broken, by the swelling, by the
long continued disuse, and by the position which you are
compelled to keep it in to form the knitting of the bones.
Q.   Then an injury to the head, such as the plaintiff in
this case sustained, could produce that rumbling in the
ear?   A.   Yes, sir; it could."

This line of testimony is properly subject to criticism.
In place of stating what could happen and could result, he
ought to have stated what in his opinion would be the nat-
ural or probable result.   But this witness was cross-exam-
ined at length upon each question herein set out, and he
described in detail the character and extent of each injury
received.   It will be noted, too, that he stated to the jury:
"It would be impossible for me to say whether they were
permanent or not, any one of them."   It is true that he fol-
lows this by saying they could be permanent, and that
part of the answer ought to have been stricken out.   But
he follows that answer by fully explaining the character
of the injuries, and again stating that it is impossible for
him to state whether the injuries would be permanent, but
states that they would be liable to be permanent because
he was unable to restore the muscles, ligaments and ten-
dons to their former condition.   Again, in explanation of
the injuries to the arm, and his answer that the injuries
to that member could be permanent, he gives his reason
for the answer by stating:   "Every broken bone leaves
more or less of a weakness or defect in the bone which
cannot be restored, and it always leaves—affects the struct-
ures, muscles, etc., surrounding the part that is broken,
by the swelling, by the long continued disuse, and by the
position which you are compelled to keep it in to form the
knitting of the bones."   The plaintiff had testified to a

rumbling in his head, and the doctor, in his testimony on that question, merely stated that this rumbling could be produced from the injuries. He did not say that it was so produced, and the most that can be said is that the testimony fails to show a permanent injury to the head or to the ear. The witness was subjected to an exhaustive cross-examination touching these injuries. He appears to have been an intelligent, candid witness, and we cannot find that the jury was misled as to the extent of the injuries received.

Eleven months had elapsed between the time of the injury and the trial, and plaintiff was earning over $100 a month prior to the injury; but from that time to the time of the trial he had been unable to follow his usual avocation or to earn anything. The loss of time alone would amount to $1,100. He alleges the disbursement of $100 for medical attention and nursing, which amount seems very small under the circumstances, and his total recovery was only $2,250. This does not indicate that much, if anything, was allowed for permanent injuries. The verdict rather indicates that the jury did not regard the injuries as of a permanent character, and we think it may be said that he was not allowed more than a reasonable amount for the loss of time, expenses incurred, and for the pain and suffering endured.

Error is assigned for the giving of certain instructions, and paragraphs therein are singled out for criticism. In *Lincoln Traction Co. v. Brookover,* 77 Neb. 221, and cases therein cited, this court has disposed of the question in the following language: "It is a well-established rule that instructions must be construed together, and if, when taken as a whole, they correctly announce the rules applicable to the issues and the evidence, they will be upheld, even though a single paragraph standing alone may be faulty. *Bartley v. State,* 53 Neb. 310; *Love v. Putnam,* 41 Neb. 86. The true meaning of instructions is to be determined, not by a separate phrase or paragraph, but by considering all that is said on each particular subject

or branch of the case." When this test is applied, we find no error in the charge of the court to the jury.

Again, error is assigned in the court's refusal to give an instruction requested by defendant; but the court, on its own motion, had given the substance of the instruction asked, and it was, therefore, properly refused.

The record being found free from error, the judgment of the district court is

AFFIRMED.

BARNES, FAWCETT and HAMER, JJ., not sitting.