DONALD BIGGS, APPELLEE, v. WILLIAM H. GOTTSCH, APPELLANT, IMPLEADED WITH SAFEWAY CAB COMPANY, APPELLEE.

112 N. W. 2d 396

Filed December 15, 1961.   No. 35009.

*Gross, Welch, Vinardi, Kauffman, Schatz & MacKenzie,* for appellant.

*Eisenstatt & Lay* and *John J. Higgins, Jr.,* for appellee Biggs.

*Cassem, Tierney, Adams & Henatsch,* for appellee Safeway Cab Co.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BROWER, J.

This action involves a suit for damages for personal injuries sustained in the collision of an automobile driven by the appellant William H. Gottsch, defendant in the district court, and a taxicab operated by the appellee and plaintiff Donald Biggs. The Safeway Cab Company

was made a party defendant because of rights of sub-rogation only.

In this opinion Biggs will be referred to as plaintiff and Gottsch as defendant as they were designated in the district court.

Trial was had to a jury which resulted in a verdict and judgment for the defendant dismissing the plaintiff's action. A motion was thereupon made by the plaintiff for a new trial which was sustained by the trial court. The defendant appealed from this order granting the new trial.

The collision which is the basis of the action occurred January 28, 1959. It took place at the intersection of Forty-first and Leavenworth Streets in the city of Omaha at about 6:45 p.m. It was a dark and cloudy day and the street lights were on. There was however no precipitation, fog, or mist, and the visibility was good. The area was well lighted at the time. Both streets were paved. The paved portion of Leavenworth Street was 54 feet wide and that of Forty-first Street was 24 feet in width. Leavenworth Street was a through street protected by stop signs. It slopes down from the east to the west on a 1.4 percent grade. From exhibit No. 1, a plat introduced in evidence and drawn to scale, the stop sign on the west side of Forty-first Street is approximately 19 feet north of the north curb line of Leavenworth Street and the other stop sign is on the east side of Forty-first Street between 43 and 44 feet south of the south curb of Leavenworth Street. Leavenworth Street has six lanes, three going to the west and three to the east. The outside lane on either side is 7 feet wide and is generally referred to in the evidence as the parking lane. Forty-first Street is a two-lane street. The city ordinance provided for a speed limit of 30 miles an hour on Leavenworth Street.

Plaintiff Biggs was driving the taxicab north on Forty-first Street. In the back seat was a passenger, Laura Wagner. The defendant Gottsch was driving west on

Leavenworth Street. The two drivers and Laura Wagner were the only eyewitnesses present at the time of the accident who testified.

The other matters of evidence being conflicting, we will take them up in conjunction with the discussion of the legal questions involved.

In sustaining the motion for new trial the district court gave no reasons for so doing. In such a case this court has held: " 'If the trial court gave no reasons for its decision in sustaining the motion for new trial, then the appellant meets the duty placed upon him when he brings the record here with his assignments of error and submits the record to critical examination with the contention that there was no prejudicial error. The duty then rests upon the appellee to point out the prejudicial error that he contends exists in the record and which he contends justifies the decision of the trial court. The appellant then in reply has the right, if he desires, of meeting those contentions.' Maska v. Stoll, 163 Neb. 857, 81 N. W. 2d 571. See, also, Hert v. City Beverage Co., Inc., 167 Neb. 557, 94 N. W. 2d 27; Gain v. Drennen, 160 Neb. 263, 69 N. W. 2d 916; Sautter v. Poss, 155 Neb. 62, 50 N. W. 2d 547. As stated in Sautter v. Poss, *supra*: 'There is no burden in the sense of a burden of proof upon either party. The burden is upon both parties to assist the court to a correct determination of the question or questions presented.' " Sleezer v. Lang, 170 Neb. 239, 102 N. W. 2d 435.

Complying with this rule the defendant filed his brief in which he assigns as error the sustaining of plaintiff's motion for new trial and that the trial court erred in holding the admission of certain evidence of police officer Pekula hereinafter discussed was prejudicial error.

The plaintiff in his brief states the questions involved are, did the trial court abuse its discretion in granting a new trial when the weight of the evidence was clearly contrary to the verdict received; when it erroneously instructed the jury as to the issues in the case; when it

failed to properly instruct the jury on the issues; in finding the erroneous admission of a conclusion as to a point of impact of vehicles by a police officer prejudicial to the plaintiff appellee; in granting a new trial on the improper redirect examination of the witness Wagner over counsel's objections; and when it erroneously instructed the jury on comparative negligence and contributory negligence.

On examination of plaintiff's brief it appears that he does not point out any error in the form of the instructions either in the assignment of the questions involved or the argument. He does not point out in what respect they do not state the law. The contention is that they are not applicable because the evidence shows the defendant is charged with negligence as a matter of law and that there was no contributory negligence attributable to the plaintiff as a matter of law; and that under the evidence the defendant had forfeited his right-of-way on Leavenworth Street because of excess speed as a matter of law. Thus, all the questions except those concerning the admission of certain evidence must be determined by a review of the conflicting evidence.

They must be considered in view of the following rules of law pertinent to these questions.

" 'Where the verdict of a jury is clearly against the weight and reasonableness of the evidence, it will be set aside and a new trial granted.' " Langdon v. Loup River Public Power Dist., 144 Neb. 325, 13 N. W. 2d 168.

"However, 'when the evidence is conflicting the verdict of the jury will not be set aside, unless it is shown to be clearly wrong.' " Langdon v. Loup River Public Power Dist., *supra.*

"It is the province of the jury to harmonize the testimony in so far as that is possible, and in case of conflict to decide as to the weight to be given the testimony of the various witnesses." Langdon v. Loup River Public Power Dist., *supra.*

"Where, however, there is a reasonable dispute as

to the pertinent physical facts, the conclusions to be drawn therefrom are for the jury, and a verdict based thereon will not be disturbed unless clearly wrong." Rueger v. Hawks, 150 Neb. 834, 36 N. W. 2d 236.

"It is the rule in this jurisdiction that physical facts may not be accepted as a matter of law or as ground for refusal to submit a case to a jury as against the testimony of witnesses on a controverted fact question, unless they are demonstrable to a degree that reasonable minds cannot disagree concerning their existence, and unless the results flowing therefrom are demonstrable to the same degree agreeable to the known and immutable laws of physics, mechanics, or mathematics. See, Jones v. Union P. R. R. Co., 141 Neb. 112, 2 N. W. 2d 624; Riekes v. Schantz, 144 Neb. 150, 12 N. W. 2d 766; Pruitt v. Lincoln City Lines, 147 Neb. 204, 22 N. W. 2d 651." Rueger v. Hawks, *supra*.

"Where a motorist on a nonfavored street stops at an intersecting arterial highway when the intersection is clear of traffic, looks to the right and left for approaching vehicles, acting as a reasonably prudent person in the exercise of due care would act in the belief that he has time and opportunity to safely cross, he is not liable for negligence merely because he attempts to do so. * * *

"Where the driver of a motor vehicle approaching a through street or highway stops and looks and sees an approaching vehicle on the favored street or highway but erroneously judges its speed or distance or for some other reason assumes he can proceed with safety and not have a collision, the question of whether or not his conduct in doing so makes him guilty of contributory negligence is usually one for the jury." Paddack v. Patrick, 163 Neb. 355, 79 N. W. 2d 701.

With these rules in mind we will now discuss the conflicting testimony of the witnesses as shown by the evidence.

Dennis Edward Pekula, who had been an officer of the

Omaha police department since 1956 and had been engaged in investigating automobile accidents, testified for the plaintiff. He was present at the scene shortly after the accident and investigated it. When he arrived, the Nash automobile of the defendant was on the northwest corner of the intersection facing northwest. The front wheel was past the west curb line of Forty-first Street. The Studebaker checker cab of the plaintiff faced to the southeast with its rear end against the traffic stop sign on Forty-first Street, 15 to 20 feet north of the north curb of Leavenworth Street. The defendant was standing to the rear of his car and the plaintiff was still in the taxicab. The skid marks of the Nash vehicle measured 22 feet in length and extended from a point 20 feet east of the east curb line of Forty-first Street to a point 2 feet within the intersection, veering to the north in the last foot. Plaintiff's taxicab left no skid marks. The skid marks of defendant's automobile were in the middle of the first driving lane to the north. The debris was 18 feet from defendant's automobile in the northeast quadrant of the intersection and was spread all over the quadrant. The skid marks led to it. The officer talked with defendant who was unable to give him the distance he was from the cab when he first realized danger, or his speed at that time, but at the time of the accident estimated his speed to be 20 to 25 miles an hour. He noted Gottsch wore glasses. The plaintiff said he did not notice any danger.

On cross-examination the officer stated defendant told him he noticed there was going to be a collision but couldn't tell exactly where he was at the time. He was then asked whether he determined where the impact took place and he stated he determined it from debris and skid marks and gave as his opinion that it was 16 feet south of the north curb line of Leavenworth Street. Objection was made by plaintiff's counsel, which will be discussed later.

On redirect examination he stated that the point of

impact was the center of the debris and that was what should be understood by that term.

Donald Biggs, the plaintiff and driver of the taxicab, testified he was 55 years of age and had driven Safeway cabs for 6½ years. A passenger Laura Wagner rode in the back seat. Plaintiff stopped near the curb line on Leavenworth Street as he always did where the view there was unobscured. He looked first to the west and saw cars approaching in the center lane and one next to it. When he first saw the automobiles they appeared to be about three or four hundred feet away which he considered a block. No other cars were coming then from the west or east. He started in low gear. The taxicab moving in the middle of the intersection got up to 8 or 10 miles an hour in low. When its bumper was in the center of the street he looked to the east again. He was apparently in the clear, and shifted into second gear and proceeded north. When in the center of the street he estimated the cars he saw approaching from the east were a third of a block away in the middle lane and the one next to it. The automobile in the middle lane was the closest and slowed down a bit to let him pass. When the front end of his car was north beyond Leavenworth Street he felt the shock of the collision. The taxicab spun around clockwise to the west side of Forty-first Street against the steel pole where it was headed in the opposite direction, the front end being 2 or 3 feet out of the intersection. At the time of the impact he was going 10 or 15 miles an hour. Photographs of the taxicab after the collision and bills for the repair of the taxicab in the amount of $1,122.66, and the defendant's automobile for $1,009.15, were introduced in evidence.

On cross-examination Biggs testified he was familiar with the intersection and that he stopped at the curb for the stop sign and not at the sign itself, which he thought was back 10 or 15 feet. He recalled stating in a deposition that he stopped at the stop sign itself with

the front of the taxicab about even with it but now knows he stopped south of the curb. There is no view to the west unless you are at the curb line and that he was mistaken in his former testimony. When the eastbound traffic was in front of him he saw two cars, or perhaps three cars in a group in motion coming west. When the westbound traffic cleared the intersection he started forward and there was no delay. He definitely remembered looking to the east only twice. He could have stopped before he got in the north driving lane. The automobile in the inside lane and the one next to it were fairly close together. He never saw what kind of a car struck him and was not sure its lights were on or which car of the group hit him. Plaintiff did not remember going in front of the automobile when it was close to him on the inside lane. It slowed down a bit about a third of a block away, and seemed to be going about normal speed. The car on the right of his cab was possibly a car length behind. The automobile on the outside lane might have been 75 feet away when he was in, or a little past, the middle of the intersection.

William Gottsch, the defendant, was called by the plaintiff. He stated when he put his foot on the brakes his car moved up about a car length. When asked whether he kept his brakes jammed on until coming to rest, he answered, "A- That's a difficult question. I imagine at the time of the impact I was thrown sideways. My foot probably slipped off of the brakes."

Gottsch's evidence in a deposition was introduced for admissions and in it he stated that at the time he was approaching Forty-first Street the car ahead in his lane was 6 or 8 car lengths, and it went through the intersection ahead of him. Near the intersection the car in the middle lane to his left was about a car length ahead of his car. He didn't notice whether it came to a stop or kept on going. He didn't see the plaintiff's cab until it was approximately in the middle of Leavenworth Street; and between the time he put on his

brakes and hit the taxicab his speed was reduced about 50 percent. He looked right and left on approaching Forty-first Street. The so-called car at his left was a panel truck, and because of it he couldn't see the traffic in the intersection.

At the trial of the case of State v. Biggs he had stated the right side of his car was 8 or 10 feet from the curb on Leavenworth Street and he saw the plaintiff's taxicab only momentarily when it was past the center of the street. Though he looked to the right and left, he didn't see the taxicab because the car alongside obstructed his vision. When he was about a car length from Forty-first Street the automobile alongside was there.

O. H. Witt testified he was a captain of the Nebraska State Safety Patrol. He was on the patrol since 1937 and was trained and qualified as an expert in traffic investigation. He had studied speed and skid marks from known physical facts. He explained the speed of automobiles could be determined from skid marks and other known physical facts such as pavement, grade, and directional force of the cars concerned. Subsequent to the accident the witness examined the paving at the intersection involved. The kind of car, its weight, the condition of the tires made no difference, but the grade and condition of the pavement and the direction of the impact make a difference. The witness studied the photographs of the car that were in evidence. His experiments with the mathematical formula to figure speed had been verified from his experience. He was then asked a hypothetical question as to the speed of the defendant's car based on the type of cars, their wheel base, their course, the grade, the condition of the intersection as to the paving when dry, the position of the cars after the accident, the damage shown in the photographs in evidence, and the 22 feet of skid marks. Witt testified it was his opinion, based on his formula which he had previously worked out, that the defend-

ant's Nash at the point of impact was going 25 miles an hour and that it would have been going 35 miles an hour at the time the brakes took effect and the skid marks appeared; that there was a lag distance when the car was momentarily slowing before the brakes became effective; and that considering this lag distance the car was going 39 miles an hour before the driver started to apply them. He stated there is a simple formula by which one determines the distance a car will go per second. This formula was to multiply the miles per hour by one and one-half and the result will be feet per second. He further stated that by another method of ascertaining the speed involved from the length of skid marks and the car damage shown by the bills for repairs showed a speed in excess of 35 miles an hour before applying the brakes, and 25 miles an hour at the point of impact, but on recross-examination he stated this method was based more or less on personal experience.

William Gottsch called in his own behalf testified that he was 64 years old; that he went to the Fireside Restaurant between Thirty-seventh and Thirty-eighth and Leavenworth Streets to eat, leaving there about 6:30 p.m. He then proceeded west on Leavenworth Street traveling in the north traffic lane. There was an automobile immediately ahead of him in his lane and another one in the center lane going west. As he approached Fortieth and Forty-first Streets his speed was 20 to 25 miles an hour and it so continued until he came to the intersection. The car ahead in his own lane was 8 or 10 car lengths ahead at Forty-first Street. The automobile on the inside lane was approximately a car length ahead. It was going about the same speed as his own. He saw the headlights on his left at about the center of Leavenworth Street coming out in front of the other car, and slammed on his brakes. He saw the lights when he was 20 or 30 feet back from the crosswalk. The front of his car collided with the side of

this car. The taxicab appeared to be picking up speed. When defendant applied his brakes it reduced his speed 50 percent. He didn't know how fast he was going when the cars came together. He did all he could to avoid the accident. He was sure he wasn't going 30 miles an hour. He didn't see the taxicab as he came down the street, nor when it came out from the stop, nor until he put on his brakes. His Nash automobile gained slightly on the automobile in the inside lane in the first block. After that they drove all together. The car to his left partially, or wholly, blocked his vision.

Laura Wagner testified she was a passenger in the Safeway cab. It stopped on the south side of Leavenworth Street for the stop sign, though she didn't remember whether at the curb or the stop sign itself. She didn't pay much attention to traffic on Leavenworth Street but it was fairly busy, nor did she notice the traffic from the west at all. Before the taxicab started into the intersection there was a truck facing west in the inside traffic lane. This was a panel truck either stopped or slowing, and the taxicab went in front of it. She thought it was 3 or 4 feet to the taxicab's right, but didn't know exactly. She didn't see the Gottsch automobile.

On cross-examination the witness testified that she did not protest to the driver of her cab or complain of his driving. She observed the traffic as one observes it as a passenger. She had filed suit against Gottsch, the Safeway Cab Company, and Biggs, and in her petition she stated that Gottsch was going 40 miles an hour. She gave the facts to her attorney who prepared it from her information and his private investigation, and she verified the petition.

On redirect examination she testified substantially as on direct to the presence of the panel truck and that it was apparently waiting for the cab to pass. Over the objection that it was "improper and an attempt to impeach his own witness," she said she had made alle-

gations against Biggs in the petition filed in her own suit, including that he failed to keep a proper lookout and that the taxicab went across Leavenworth Street at a time when the view of the cab driver was obstructed by westbound turning traffic. On recross-examination she stated she had sued Gottsch for $25,000.

The evidence is in many respects conflicting. All of the witnesses had testified previously either in depositions or at other trials involving the same factual situation. On cross-examination there were variances in their testimony brought out as to the details of their testimony which we have not generally set out. In at least some instances they had given evidence or statements on four different occasions. However, the substance appears substantially as outlined.

This evidence is in many respects conflicting and presents at least two factual theories. The plaintiff contends he entered the intersection at a time when the only approaching traffic was almost a block to the east. He started from the curb with ample time to cross the intersection and that any approaching vehicle should have under the circumstances slowed and allowed his cab to proceed. The defendant was bound to give him the right-of-way but failed to observe the condition of the traffic or to look when and where he was required to look. Defendant approached the intersection at an unlawful and dangerous rate of speed, as testified to by the expert Witt, and ran into the plaintiff's taxicab as the result of his negligence.

The defendant's theory is that the plaintiff left a position of safety and drove into the intersection perhaps from a position near the stop sign in accordance with his previous testimony. The plaintiff's vision as well as that of the defendant was at least partially obscured by the presence of a panel truck on the inside lane of westbound traffic. It was necessary for this truck to stop or slow down to allow the plaintiff's taxicab to pass. The plaintiff proceeded into the intersection im-

mediately after the eastbound traffic had cleared, when the panel truck was at or close to the intersection, and without correctly appraising the speed of approaching traffic or its distance from the intersection. Defendant's speed was 20 to 25 miles an hour as he testified and not the speed which the officer had computed.

The conflict of theories and the various discrepancies in the testimony were questions for the jury and were submitted to it. It appears there was ample evidence, if believed by the jury, to find the defendant or the plaintiff, or both of them, guilty of negligence. If the plaintiff was negligent his negligence might have been considered more than slight as compared with the defendant's negligence. We, therefore, conclude that the issues were properly submitted to the jury.

The jury was the sole judge of the facts presented by the evidence. It found for the defendant on the issues submitted. Its findings cannot be disturbed when based on conflicting evidence as to which reasonable minds would differ. We find no error in the submission of the cause to the jury.

There remain certain matters with respect to the evidence to consider. First, in the cross-examination of the witness Pekula, he was allowed, over proper objections, to testify where he determined the point of impact to be. In the case of Danner v. Walters, 154 Neb. 506, 48 N. W. 2d 635, this court held that an expert cannot give his opinion as to the point of impact because it would be his opinion upon the precise or ultimate fact in issue before the jury, which must be determined by it. The case held the testimony of the witnesses should be restricted to concrete facts perceived by the use of their senses as distinguished from such opinions. In the present case, however, the plaintiff's counsel brought out on redirect-examination that the witness referred only to the center of a lot of debris in the center of the street. It appears this was all he could be understood to refer to. The explanation was

sufficient to explain to the jury the fact to which he testified and we find no prejudice resulted. Travis v. Omaha & C. B. St. Ry. Co., 98 Neb. 200, 152 N. W. 395; 5A C. J. S., Appeal and Error, § 1735 (a) (2), p. 1031.

The plaintiff in his brief objects to rulings in regard to the admission of evidence in the redirect-examination of the witness Wagner over the objection of counsel for the plaintiff. The questions were concerning her suit which had been filed against the defendant, the plaintiff, and the taxicab company. The objections are pointed out to some extent in the plaintiff's brief. However, the motion for new trial did not assign any objection to this particular testimony or any general assignment as to errors in regard to the admission of evidence. The only objection to the ruling of the court below on the reception in evidence was that of the admission of the testimony of officer Pekula with respect to the point of impact previously discussed, which was specifically assigned. In Kline v. Metcalfe Constr. Co., 148 Neb. 357, 27 N. W. 2d 383, this court held: "The rulings on the admission of testimony can be reviewed by this court when, either by general or specific assignment on the motion for new trial, they are called to the attention of the trial court."

The issues were properly submitted to the jury. The rulings of the court on the evidence subject to review by this court were not prejudicial. This court has held: "Where a party has sustained the burden and expense of a trial and has succeeded in securing the verdict of a jury on facts in issue, he has a right to keep the benefit of that verdict unless there is prejudicial error in the proceedings by which it was secured." Hert v. City Beverage Co., 167 Neb. 557, 94 N. W. 2d 27.

The judgment of the court below in sustaining the motion for new trial and setting aside the verdict of the jury is reversed and the cause remanded with directions to reinstate the verdict and judgment rendered thereon.

REVERSED AND REMANDED WITH DIRECTIONS.