EUGENE E. CULLINANE, APPELLEE, v. MILDER OIL CO., A CORPORATION, ET AL., APPELLANTS, IMPLEADED WITH RICHARD KNUDSEN, DOING BUSINESS AS CONCRETE FORM CO., APPELLEE.

116 N. W. 2d 25

Filed July 6, 1962. No. 35225.

Cassem, Tierney, Adams & Henatsch and Morris J. Bruckner, for appellants.

A. A. Fiedler and Spielhagen, Matejka & Spielhagen, for appellee Cullinane.

Story, Pilcher, Howard & Hickman, for appellee Knudsen.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BROWER, J.

This was an action brought in the district court for Douglas County, Nebraska, for personal injuries sustained by the plaintiff and appellee Eugene E. Cullinane, in a collision between an automobile driven by the plaintiff and a truck operated by the defendant Donald E. Pettit while on the business of his employer, the defendant Milder Oil Company, a corporation, which was the owner thereof. These two defendants are the appellants herein. Richard Knudsen, doing business as Concrete Form Company, was the employer of the

plaintiff. He filed an answer asking subrogation to any judgment recovered by the plaintiff because of compensation paid to him under the Nebraska Workman's Compensation Act. He will not be referred to again. The other parties will be designated herein as they were in the trial court.

The trial resulted in a verdict for the plaintiff in the sum of $2,000. The plaintiff filed a motion for new trial which the trial court sustained. From the ruling granting the new trial the defendants have appealed to this court.

The pleadings of the parties adequately presented the defendants' negligence and the plaintiff's contributory negligence. Both issues were submitted to the jury under the instructions of the trial court. No objection to the instructions regarding the submission of the issues, or otherwise, is made by either party.

No reason was assigned by the trial court for setting aside the verdict and granting a new trial. Both parties have properly assumed the burden of assisting this court to a correct determination of the question presented. Biggs v. Gottsch, 173 Neb. 15, 112 N. W. 2d 396. In their briefs they agree that the trial court's ruling was premised on its belief that the verdict was so inadequate as to require a new trial. Plaintiff contends the trial court was correct in its ruling. The defendants maintain the verdict returned was within the discretion of the jury under the evidence and should not have been disturbed. The only question before us therefore is whether the verdict was so inadequate that the trial court could in its discretion set it aside.

The accident in which the plaintiff was injured occurred in the city of Omaha on March 14, 1959. He was taken in an ambulance to the Douglas County Hospital from the scene of the collision. There he was attended by his family doctor Joseph P. Drozda. The doctor testified the plaintiff had suffered severe head injuries and injuries to his right shoulder, cervical spine, lumbar

spine, and both legs. On the scalp there was a laceration extending from the forehead over the top to the back of the head. Sutures taken in his head wounds were long and large, the edges of the wounds being wide-spread with the skull protruding. Severe pain resulted in manipulation of the right shoulder and right knee and hip. X-rays taken of the skull and right shoulder disclosed no evidence of trauma or injury. There was a severe contusion of the right eye with hemorrhage under the skin and beneath the eyeball itself, making the eye appear a mass of blood. The patient was given medication for relief of pain, tetanus antitoxin, and antibiotics to counteract infection.

On March 15, 1959, he was transferred to St. Joseph's Hospital from which he was discharged on March 18, 1959. X-rays taken of the skull and the cervical spine disclosed no evidence of fractures or dislocations. While there antibiotics and medication to relieve pain and swelling from the wounds were continued. On the average of once a week until May 27, 1959, he called at the doctor's office where his wounds were dressed and the sutures removed. The cervical spine was given physical therapy in the form of ultra-sound. A Lewin collar made of a roll of bandage-type tissue was made to be wrapped about the neck, which could be worn, taken off at intervals, and re-applied by the patient. It was last worn on April 16, 1959. Medication for relief of muscle spasm was administered during the whole of this period but drugs for pain were gradually taken from him. On May 27, 1959, the patient told the doctor he was feeling well until he attempted to play ball with the children at which time his headaches and soreness in the neck were aggravated. In general he then stated he was getting along quite well. The weekly visits were discontinued on May 27, 1959, at which time the doctor stated the patient was relatively free from symptoms referable to his cervical spine injury. His head was completely healed, including the eye, although he ex-

perienced some headaches at infrequent intervals, and there were then no complaints with reference to the back.

On July 13, 1959, defendant again went to the doctor's office. He complained of pain in his hip which was very pronounced on motion, and of pain in his neck on manipulation. There was however no definite swelling. The tests made disclosed marked spasm, with pain radiating to his right foot. He was treated at the office for these complaints on July 13, 16, and 31, and on August 8 and 12, 1959. Medication was given to relieve the pain. He was given Endegia regularly applied by needle to the hip to stimulate healing and the reaction of bodily resistance to inflammation. The patient had an appointment elsewhere on August 14, 1959, and did not see the doctor that day because of it. He had been discharged on August 12, 1959, at which time the doctor stated he was relatively free of the symptoms of which he complained.

The plaintiff was not seen again by the doctor until January 25, 1960. His complaint was severe pain from the lower portion of his back radiating into the right foot and leg. The doctor found tenderness over the lumbar region in the small of the back. Leg-extension exercises elicited great pain along the course of the right sciatic nerve. There was diminished sensation in the sole of his right foot extending to the right fifth toe. He was given diathermy and medication for pain for muscle relaxes and was placed in traction at the doctor's office to help relieve the pressure on the spine. A pelvic traction apparatus was procured for home use, consisting of a girdle-type harness with straps running down the sides of each leg with ropes passing through a pulley to weights attached. He used this in bed at home and the doctor said he thought he would sleep in it at night. Six calls to the doctor's office were made between January 25 and April 11, 1960. On the latter day the treatment ended and the doctor testified the

plaintiff said at that time he was feeling better. There was then no diminished sensation in the foot. All nerve symptoms had disappeared. There was some soreness in the right hip which was the only finding at that time referable to his injury.

On September 26, 1961, the day before the trial, he was examined for the last time. The examination disclosed that leg-extension exercises were fully accomplished without pain, the right ankle reflex was sluggish, and there was neither lack of sensation nor aggravated sensitivity in any area. Leg measurement was equal, indicating no shrinking or atrophy of the leg. He walked with a good steady gait and complained of no symptoms except when he tried to do heavy work. On cross-examination the doctor testified he found nothing essentially wrong with the patient on this examination.

The doctor concluded from all his examinations and treatment that plaintiff's injuries were lacerations of the scalp, strain of cervical spine, contusion of right shoulder and both legs, lumbosacral sprain, with herniated disc in the lumbosacral area, which is the lower portion of the back. He gave it also as his conclusion that nerves which caused the lack of sensation in his fifth toe came from the first sacral nerve which had been injured, bruised, or compressed in the area between the fifth lumbar and first sacral vertebrae. The doctor, when asked to give his opinion as to whether plaintiff was suffering from any permanent disability, answered, "I think that Mr. Cullinane has had a — any permanent impairment, which would only be involved to the disc syndrome which would give him about five percent disability."

With respect to his working the doctor testified that according to his knowledge he wasn't able to work from the date of the accident to September 4, 1959, or from January 25 to April 11, 1960, but that he worked from September 4, 1959, until January 25, 1960. The patient

canceled an appointment with the doctor on September 4, 1960, because he was working at the Capehart project.

The plaintiff testified on his own behalf. At the time of the accident on March 14, 1959, he was regularly employed by Knudsen Construction, branch of the Concrete Form Company, as a supervisor. He received $100 a week and a bonus. Plaintiff was 35 years of age and had an expectancy of 32.59 years. He stated he was unable to return to work after the accident until the middle of the following August. After 2 weeks he stopped working and stated it was because he could not take a full day for one thing, and had headaches bothering him. After being idle 2 weeks, in which he looked for other type of work but failed to find it, he went into business for himself on about October 1, 1959. For this purpose he incorporated. His new business was construction work. It was the same type of business in which he was formerly employed. He was awarded a subcontract on the Capehart project at Offutt Airfield, which included all the masonry and concrete work on 216 units. Workmen were employed by him in the new business. The work was completed in January 1961. His compensation on the contract was $400,000. He testified he was in traction from the first part of January until the latter part of March 1960, and was unable to attend to business except for a short time when he had his employees come to his home to conduct his business. He stated he was out of work 4 or 5 months. He further stated that during the time of self employment he was home from January to April and that after the second week his business was at a standstill.

Plaintiff described the treatment quite briefly as the doctor had stated before. He testified he had scars on top of his head and from the right shoulder to the rib carriage. Plaintiff stated that from the time of the accident to August 1959, he was given treatments once or twice a week, depending upon the severity of the pain, and that he had headaches in the summer and fall of

1959; and that for a period of 4 months in 1960 he could not sleep and was under heavy medication because of severe pain. He was given therapy treatments by Dr. Paul Reichstadt about twice a week from June to August 1960, but there is nothing in the record to disclose what these were about. At the time of trial, on weather changes he stiffened up, had pain, couldn't drive long distances because of shoulder pain, and suffered from occasional headaches. When asked if he could lift heavy objects in his work, he testified, "I haven't lifted anything much heavier than a pencil since this accident."

Plaintiff's doctor, hospital, and ambulance bills were introduced in evidence. They totaled $345.50.

Defendant did not introduce any testimony with respect to damages and that outlined is the only evidence concerning them.

The plaintiff's contention is that his expense of sickness was $346.50; that he lost 23 weeks' time from work which at $100 a week was $2,300, making $2,646.50 monetary loss; and that nothing was awarded by the jury for pain suffered, or for 5 percent permanent disability.

The court's instructions to the jury on damages submitted all of these items to the jury for its consideration. The plaintiff's theory seems to be that because the defendant introduced no evidence tending to disprove the damages as given in the plaintiff's evidence, that the several items in that evidence had to be given credence by the jury in the full amount claimed by plaintiff and his doctor. Further, that the jury could not have arrived at the amount of its verdict by a reduction thereof because of any contributory negligence it might have attributed to the plaintiff; that unless the negligence of the plaintiff was found to be slight in comparison with that of the defendant, it could not have found for the plaintiff at all; and that if plaintiff's negligence was slight in comparison with the defendant's negligence, the verdict under the law could have been reduced only slightly, and the $2,000 awarded would still be inade-

quate and not that which should have been rendered under the court's instructions.

The plaintiff was in the hospital 4 days in all. X-rays disclosed no fractures or dislocations, evidence of trauma, or injury to the skull. He was able to go to the doctor's office weekly. On three occasions he was discharged from his doctor's care, at which times the symptoms for which he had then been treated had disappeared and he was considered in reasonably good condition. At each recurrence of trouble his symptoms differed considerably. Though his doctor found a 5-percent permanent disability, he found nothing essentially wrong on his last examination. The time he was off work, as testified to by the plaintiff and his doctor, did not correspond completely, and the time he was searching for a new position and preparing for self-employment was not clearly distinguished.

Even though defendant introduced no evidence in regard to the plaintiff's damages, the jury as trier of the facts had before it matters in evidence from which different inferences could arise.

In Klein v. Wilson, 167 Neb. 779, 94 N. W. 2d 672, this court held: "It is the province of the jury to harmonize the testimony insofar as that is possible, and in case of conflict to decide as to the weight to be given the testimony of the various witnesses.

"Triers of fact have the right to test the credibility of witnesses and to weigh their undisputed parol testimony against the facts and circumstances in evidence from which a conclusion may properly be drawn that the witness was mistaken.

"In a case where, under the law and facts, the submission of the issue of contributory negligence and a comparison thereof with negligence of the opposing party to ascertain what damages, if any, shall be allowed is proper, the determination of the amount of damages is for the jury."

The jury was the sole judge of the facts presented by

the evidence. It found for the plaintiff but it had before it the task of considering the testimony of the witnesses and the credence to be placed upon it, and to reconcile it as best it could. It was not obliged to accept the plaintiff's or his doctor's testimony to the full extent of the damages claimed. It also had before it the question of the plaintiff's contributory negligence and the amount of damages the award could be reduced under the comparative negligence rule. Under such circumstances we do not feel a verdict of $2,000 is so inadequate as a matter of law that it should be set aside. Certainly it is not so inadequate as to indicate passion or prejudice.

" 'Where a party has sustained the burden and expense of a trial, and has succeeded in securing the verdict of a jury on facts in issue, he has a right to keep the benefit of that verdict unless there is prejudicial error in the proceedings by which it was secured.' " Biggs v. Gottsch, *supra*. See, also, Hert v. City Beverage Co., 167 Neb. 557, 94 N. W. 2d 27.

The plaintiff cites certain cases, where judgments on verdicts were held inadequate or were not in accord with the court's instructions that were set aside, which he considers decisive of this case. Olson v. Shellington, 162 Neb. 325, 75 N. W. 2d 709, was a case where a minor who was a guest in an automobile sued the driver of the car in which he rode. A judgment of $24,000 was recovered but the jury added to its verdict, "We find slight negligence on the part of the defendant." This was held inconsistent because the verdict against the host driver should not have been returned because of slight negligence. The case does not involve inadequate damage and is clearly not applicable. Dolen v. Beatrice Restaurant Co., 137 Neb. 247, 289 N. W. 336, is a case where the plaintiff fell down the stairs in the defendant's place of business. The doctor bills were $994, and the plaintiff was quite severely injured. No contributory negligence was involved. A verdict of $700 was held so inadequate as to indicate passion and prejudice. Harper v. Young, 139

Neb. 624, 298 N. W. 342, was a case where a rural mail carrier was injured while his car was standing still at a mail box. No contributory negligence was involved. The doctor, medical, hospital bills, and loss of time aggregated $1,721.96, and a verdict of $1,225.66, was likewise set aside. In the cited case, plaintiff had permanent injuries to the head, neck, and left shoulder. His arm and hand tissue was atrophied and there was a limitation of movement and loss of hearing involved. Ambrozi v. Fry, 158 Neb. 18, 62 N. W. 2d 259, and Schumacher v. Lang, 160 Neb. 43, 68 N. W. 2d 892, are both cases in which a guest sued the driver of the automobile in which the guest was not riding. Verdicts deemed inadequate were returned but on evidence clearly involving far greater damages and where no contributory negligence existed. These authorities cited by the plaintiff are all inapplicable to the case before us.

Undoubtedly there was sufficient evidence to sustain a higher verdict had it been returned. It is not however the province of this court to interfere with the verdict because its view of the evidence would warrant a greater one.

It follows that the judgment of the trial court setting aside the verdict and granting a new trial should be reversed and the cause remanded with directions to reinstate the verdict and enter judgment thereon.

REVERSED AND REMANDED WITH DIRECTIONS.