THOMAS R. MAIN, APPELLANT, V. HULDA SORGENFREI, APPELLEE.

118 N. W. 2d 648

Filed December 14, 1962. No. 35256.

Richard A. Dier and S. Bruce Barton, for appellant.

Tye, Worlock & Knapp, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

This is an action at law brought by Thomas R. Main, plaintiff, against Hulda Sorgenfrei, defendant, to recover property damage to the plaintiff's "auto car tractor" which was pulling a Trailmobile trailer, hereinafter referred to as the plaintiff's truck, or truck, and for personal injuries and loss of profits sustained by the plaintiff when his truck collided with a 1958 Chevrolet automobile driven by the defendant. Trial was had to a

jury resulting in a verdict for the plaintiff in the amount of $24,638.50. The defendant filed a motion for new trial which was sustained. Judgment on the verdict was set aside and new trial granted the defendant by the trial court. The plaintiff perfected appeal to this court.

The plaintiff's petition alleged in substance that on March 28, 1960, at approximately 8:35 a.m., the defendant was driving a 1958 Chevrolet sedan in a westerly direction on U. S. Highway No. 30, 1.2 miles west of Grand Island, and at the same time the plaintiff, a self-employed truck driver, was driving his 1960 truck in an easterly direction on said highway and was in the eastbound or south lane of traffic; and that the defendant, while attempting to pass another vehicle, negligently and carelessly permitted the rear part of her automobile to skid to the left and across the centerline of the wet highway so that her automobile, proceeding on the diagonal in a westerly direction, collided with the plaintiff's truck. The plaintiff alleged that the negligent acts and omissions of the defendant were as follows: That the defendant failed to keep her automobile under proper control; that the defendant attempted to overtake and pass another vehicle proceeding in the same direction, by driving on the left side of the centerline of the highway when the left side of the highway was not free of oncoming traffic for a sufficient distance to permit the overtaking and passing of the vehicle without interfering with the safe operation of a vehicle approaching from the opposite direction; that the defendant failed to drive the automobile she was operating on her right half of the highway; that the defendant failed to pass the truck operated by the plaintiff which was coming from an opposite direction to her right; and that the defendant failed to give the truck operated by the plaintiff at least one-half of the traveled portion of the highway, though the truck driven by the plaintiff and the automobile driven by the defendant were proceeding in opposite directions. The plaintiff further alleged that as a proxi-

mate result of the negligent acts and omissions on the part of the defendant, the plaintiff's truck was damaged to the extent that the fair and reasonable cost of repairing said damage and restoring the truck to approximately the same condition it was in prior to the accident, would amount to $889.91. The plaintiff further alleged that he was thrown about in the cab of his truck and as a result suffered personal injuries which caused him mental pain and anguish, physical pain, and necessitated reasonable expenses for medical care and treatment in the amount of $486.50; that the plaintiff will in the future suffer disability, mental pain and anguish, as well as physical pain; and that as a result thereof he has been damaged in the total amount of $20,486.50. The plaintiff further alleged that as a result of the negligent acts and omissions of the defendant, and as a result of the personal injuries sustained by him, he was disabled and unable to operate his truck from the date of the accident until August 6, 1960, and thereby suffered damages in the amount of $3,262.15. The plaintiff prayed for judgment against the defendant in the amount of $24,638.56.

The defendant filed an amended answer and cross-petition, admitting the occurrence of the collision between her automobile and the plaintiff's truck at the time and place alleged in the plaintiff's petition. The defendant alleged that the collision was solely and proximately caused by the negligence of the plaintiff; and that the plaintiff was guilty of negligence in the following particulars: That the plaintiff was operating his truck at a rate of speed in excess of that which was reasonable and proper having regard for the special hazards then existing by reason of the condition of the weather and the highway; that the plaintiff failed to decrease the speed of his truck in order to avoid colliding with the automobile of the defendant; that the plaintiff failed to decrease the speed of his truck when special hazards existed with respect to other traffic on the highway by reason of weather conditions; that the plaintiff was op-

erating his truck without lighted lamps when there was not sufficient light, because of conditions of fog then existing, to render clearly discernible persons or vehicles upon the highway; that the plaintiff failed to drive his truck on his right side of the highway; that the plaintiff failed to pass the automobile operated by the defendant, which was coming from the opposite direction, to the plaintiff's right; that the plaintiff failed to give the automobile operated by the defendant at least one-half of the main-traveled portion of the highway, though the defendant's automobile and the plaintiff's truck were proceeding in opposite directions; that the plaintiff failed to apply his brakes, if any, in order to stop his truck before colliding with the automobile operated by the defendant; and that the plaintiff failed to turn, or make any attempt to turn, his truck aside in order to avoid colliding with the automobile being operated by the defendant. The defendant further alleged that the negligence of the plaintiff was more than slight in comparison with the negligence, if any, of the defendant.

For her cross-petition the defendant alleged that as a direct and proximate result of the negligence of the plaintiff the defendant's automobile was damaged; and that the fair and reasonable cost for repairing of such damages amounted to $845.64, for which amount the defendant prayed judgment.

The plaintiff's reply to the defendant's amended answer and cross-petition denied each and every allegation therein contained except those specifically admitted.

"If the trial court gave no reasons for its decision in sustaining the motion for new trial, then the appellant meets the duty placed upon him when he brings the record here with his assignments of error and submits the record to critical examination with the contention that there was no prejudicial error. The duty then rests upon the appellee to point out the prejudicial error that he contends exists in the record and which he contends justifies the decision of the trial court. The appellant

then in reply has the right, if he desires, of meeting this contention. * * * On review in this court of an order granting a new trial, there is no burden in the sense of a burden of proof upon either party. The burden is upon both parties to assist the court to a correct determination of the question or questions presented." Biggs v. Gottsch, 173 Neb. 15, 112 N. W. 2d 396.

The evidence shows that the plaintiff was driving a 1960 model "auto car tractor," which was pulling a 1959 Trailmobile trailer. The tractor was 192 inches long, and the trailer was 8 feet wide, approximately 9 feet high, and 36 feet in length. There were 16 wheels on the plaintiff's equipment which were equipped with brakes. The truck was loaded with wheat at the time of the accident and weighed a little over 47,000 pounds. The defendant's automobile was a 1958 Chevrolet with four doors.

U. S. Highway No. 30, at the place of the collision, was flat and level, 27 feet wide, and paved with black-top. Each driving lane was approximately 13½ feet wide.

The damage to the plaintiff's equipment consisted of dents in the cab and in the trailer. The top of the trailer was in bad condition. The left front fender had a piece torn out of it, and it was cracked. The bumper cut into a tire. The steering mechanism was broken. The damage to the defendant's automobile showed that it had been hit on the left back wheel and fender. The fender was scraped and pushed over, and the trunk was jammed. The rear window was broken. The cost of the repair of the plaintiff's equipment was $889.91, and the cost of the repair of the defendant's automobile was $845.64.

It was stipulated that on March 28, 1960, the time of sunrise was 6:24 a.m., but not that the sun did rise at that time on that date.

The plaintiff's evidence is to the effect that he was 64 years of age at the time of trial, a resident of Sutherland, Nebraska, and that he made his living by trucking

and in the grain business. On the day of the accident he was driving his truck, which was in good mechanical condition. He left Sutherland between 2 and 3 a.m., and was proceeding to Lincoln. He and his son, the latter driving his own outfit, stopped at Kearney for breakfast. The plaintiff stopped at Alda to permit his son to catch up with him. From the time the plaintiff left North Platte there had been intermittent fog. At Alda the fog had lifted, and from there on to Grand Island it was cloudy. It was hazy, but visibility was from half a mile to a mile. The highway was wet, but not slippery. The plaintiff estimated that he was from 100 to 200 yards from the defendant's automobile when he first saw it. At that time he was in his own lane of traffic. He did not continue to watch it. The plaintiff estimated the speed of his truck to be between 40 and 45 miles an hour. After the plaintiff first saw the defendant's automobile it appeared a second time attempting to pass a pickup truck and was between 70 and 75 feet in front of him. It seemed to spin and cross over into the plaintiff's lane of traffic, and then the collision occurred. The plaintiff was thrown into the steering wheel and lost control of his truck. The tractor portion seemed to stop and swing to the north. It went clear around until it hit the side of the trailer portion of the truck. The trailer went directly down the south lane of the highway. The rear wheels of the tractor went off of the pavement to the south, and the tractor was headed in a northwesterly direction. There were four marks behind the trailer, made by dual wheels, which were 35, 40, or possibly 60 feet behind the trailer and ended where the trailer stopped. There was dirt 2 or 3 feet south of the centerline of the highway, also windshield glass and taillight glass in the south traffic lane. The clear glass was scattered over a large part of the highway, but the bulk of it was in the south traffic lane. It was suggested that the truck be moved, because of traffic on the highway. The plaintiff was unable to move the truck because the

brakes were locked and the steering mechanism broken. However, the truck was finally moved. The plaintiff made a report to a patrolman, and was present when the defendant made her report. The plaintiff heard the defendant tell the patrolman that she had pulled out to pass a pickup truck which was in front of her, and when she attempted to pass she lost control of her automobile. She also said she thought she would have to quit driving. On cross-examination the plaintiff testified that he did not have the lights turned on on his truck; that the first time he saw the defendant's automobile it was coming toward him; and that he did not remember reducing his speed, but he might have taken his foot off the accelerator.

The plaintiff's son testified that he owned his own truck; that he was traveling a short distance behind his father; that as they traveled east the fog became lighter; and that at the place of the accident the visibility was clear for three-fourths of a mile. He further testified that he saw the defendant's car sliding sideways. At that time he was 100 to 150 yards behind his father's truck. The defendant's automobile was sliding forward right into the front of his father's truck. The next thing he knew the plaintiff's truck was jackknifing, and the defendant's automobile went off to the edge on the north side of the highway. The plaintiff's truck proceeded east until it stopped on the south side of the highway with the front end of the tractor on the centerline. The defendant's automobile stopped right next to the centerline of the highway in its lane of traffic. Its front wheels might have been along the edge of the white centerline, west of the plaintiff's truck a little way. This witness observed the broken glass, dry dirt, and debris in the south lane, 2 or 3 feet south of the centerline of the highway. This witness further testified that he heard the defendant say to the patrolman that she lost control of her automobile and guessed she was going to have to quit driving. This witness noticed four tire

marks left by dual wheels, which began a little way east of the defendant's automobile.

A member of the Nebraska Safety Patrol investigated the accident. The plaintiff's truck and the defendant's automobile had been moved. He talked to the defendant who told him that she was westbound and was attempting to pass a truck; and that she did not see the truck coming from the west until it was too late, and she tried to get back into her own lane of traffic but did not make it in time. He observed a lot of broken glass, mud, and debris from the two vehicles and some skid marks on the highway. The skid marks were apparently made by a truck with dual wheels. These skid marks were just south of the centerline of the highway. The largest concentration of mud and debris was approximately 2 or 3 feet south of the centerline of the highway. On cross-examination this witness testified that the weather was foggy when he arrived at the scene of the accident, and this would hamper the vision of drivers at times.

The defendant's testimony was to the effect that she lived east of Grand Island on a farm; that on the morning of the accident she got her daughter Billie Joy up at 7:30 a.m., to take her to college; that her automobile was in good mechanical condition; that it was a dreary morning and the sun was not shining; that she turned her lights on and kept them on all the time because the vehicles she met on the highway had their lights on; and that before she arrived at Grand Island there was fog, but she could see through the fog due to the lights on the automobiles. However the fog did not hamper her visibility because there was just a small amount of it. She first saw the plaintiff's truck when she got along beside the pickup truck. When she was behind the pickup she was traveling 45 miles an hour and speeded up to 50 miles an hour to pass the pickup when she saw the plaintiff's truck which did not have its lights on. Her daughter said: "Mom, it's a truck." She was in her own lane of traffic when she got hit. She did not go

onto the south side of the highway after getting behind the pickup. She further testified that her automobile did not slide sideways, nor did she lose control of the automobile; that her automobile stopped in her lane of traffic on the north side of the highway; that the plaintiff's truck came to rest on the north side of the highway; that the truck jackknifed with the trailer on the north side of the white line of the highway; and that she was on her own side of the highway when she got hit. The defendant denied that she told the patrolman that she lost control of her automobile. On cross-examination this witness testified that the tractor was over on the white line of the highway toward the north.

The defendant's daughter testified that the defendant started to pass the pickup, this witness remarked that there was a truck coming, and her mother pulled in behind the pickup truck. This witness remarked that she thought they were clear, and shortly after that there was the impact. This witness further testified that the defendant's automobile was brought to a stop on the north side of the highway; that she was sure the defendant's automobile was on the north side of the highway at the time of the impact; and that the defendant did not tell the patrolman that she lost control of her automobile, but did comment that she would have to quit driving.

The defendant's husband testified that he received word of the accident about 9 a.m., and went to the scene of the accident. Automobiles had their lights on, because the fog was heavy. He saw a skid mark north of the center of the highway and inquired of the patrolman as to it, and the patrolman did not know just how the skid mark happened to be there.

The plaintiff contends that the physical facts, as well as all of the facts in this case, are sufficient to warrant the trial court to direct a verdict in favor of the plaintiff.

"It is the rule in this jurisdiction that physical facts

may not be accepted as a matter of law or as ground for refusal to submit a case to a jury as against the testimony of witnesses on a controverted fact question, unless they are demonstrable to a degree that reasonable minds cannot disagree concerning their existence, and unless the results flowing therefrom are demonstrable to the same degree agreeable to the known and immutable laws of physics, mechanics, or mathematics." Biggs v. Gottsch, *supra*. See, also, Jones v. Union P. R. R. Co., 141 Neb. 112, 2 N. W. 2d 624; Pruitt v. Lincoln City Lines, 147 Neb. 204, 22 N. W. 2d 651.

Where there is a reasonable dispute as to the pertinent physical facts, the conclusions to be drawn therefrom are for the jury. See Biggs v. Gottsch, *supra*.

It is the province of the jury to harmonize the testimony insofar as that is possible, and in case of conflict to decide as to the weight to be given the testimony of the various witnesses. See Biggs v. Gottsch, *supra*.

"In a case where different minds may reasonably draw different conclusions or inferences from the adduced evidence, or if there is a conflict in the evidence as to whether or not the evidence establishes negligence or contributory negligence, and the degree thereof, when one is compared with the other, such issues must be submitted to a jury." Graves v. Bednar, 171 Neb. 499, 107 N. W. 2d 12.

In the instant case there is a conflict in the evidence with reference to the condition of the weather and the extent of visibility of the drivers of the vehicles here involved. There is a conflict in the evidence as to whether the actual impact or collision between the plaintiff's truck and the defendant's automobile occurred on the south side of the centerline of U. S. Highway No. 30, or on the north side thereof. There is evidence that a considerable portion of the 192-inch tractor of the plaintiff's vehicle came to rest in the north lane of traffic. There was a skid mark and some debris on the north side of the centerline of the highway. There is a question as to

whether or not the plaintiff should have done something to alter the course of his truck or decrease his speed prior to the accident, as the evidence indicates he might have had time to do so. We conclude that the trial court did not commit prejudicial error in submitting the case to the jury.

The defendant attacks certain instructions given by the trial court. First, the defendant contends that instruction No. 7, relating to the comparative negligence rule, was fatally defective. The portion of the instruction referred to is as follows: "If you find that both plaintiff and defendant were guilty of negligence and that such negligence was the proximate cause of the damages to the plaintiff and you further find that the negligence of the plaintiff was more than slight when compared with the negligence of the defendant, then the plaintiff cannot recover. But if you find from the evidence that the negligence of the plaintiff was only slight when compared with the negligence of the defendant, then the plaintiff con (sic) recover but in such case the amount of his recovery must be diminished by such an amount as the contributory negligence of the plaintiff bears to the entire negligence as shown by the evidence and the verdict would be for the balance only."

The reason given by the defendant is as follows: The instruction failed to include or embody in any way any reference to what the jury might find if the negligence of the defendant fell in any degree short of gross negligence.

In the case of Morrison v. Scotts Bluff County, 104 Neb. 254, 177 N. W. 158, this court said: "The true rule is that, if plaintiff is guilty of negligence directly contributing to the injury, he cannot recover, even though defendant was negligent, unless the contributory negligence of plaintiff was slight and the negligence of defendant was gross in comparison therewith. If, in comparing the negligence of the parties, the contributory negligence of the plaintiff is found to exceed in any

degree that which under the circumstances amounts to slight negligence, *or if the negligence of defendant falls in any degree short of gross negligence under the circumstances,* then the contributory negligence of the plaintiff, however slight, will defeat a recovery. And even when plaintiff has established his right to recover under this rule, it is the duty of the jury to deduct from the amount of damage sustained such amount as his contributory negligence, if any, bears to the whole amount of damage sustained." (Emphasis supplied.)

The above rule has been continuously accepted by this court from the time of its inception to the present time.

In Ripp v. Riesland, 170 Neb. 631, 104 N. W. 2d 246, on page 655, the case of Morrison v. Scotts Bluff County, supra, is cited, and a part of the comparative negligence rule is stated in the opinion, specifically the language which does not appear in the trial court's instruction No. 7 complained of by the defendant which is a part of the rule announced by this court. See, also, Murray v. Pearson Appliance Store, 155 Neb. 860, 54 N. W. 2d 250.

In Mitchell v. Missouri P. R. R. Corp., 114 Neb. 72, 206 N. W. 12, it is said: "The trial court attempted to cover this subject in the giving of instructions * * *. In these instructions however the element referred to in the following language: 'Or if the negligence of defendant falls in any degree short of gross negligence under the circumstances, the contributory negligence of plaintiff, however slight, will defeat a recovery' is wholly omitted. In instruction * * * requested by defendant in the court below and refused this element was substantially covered. The failure of the court to embody in his instructions the element above quoted thus constitutes error."

In Ripp v. Riesland, *supra,* the court discussed the case of McMullen v. Nash Sales Co., 112 Neb. 371, 199 N. W 721. The court said: "The omission of the element: 'or if the negligence of defendant falls in any

degree short of gross negligence under the circumstances, then the contributory negligence of plaintiff, however slight, will defeat a recovery' from the instruction in McMullen v. Nash Sales Co., *supra,* would not seem to be any more fatal than the omission of the element: 'deceased's negligence was more than slight or' from the instruction in this case. The omission discussed above was an error and was prejudicial * * *."

A proper instruction under the comparative negligence statute requires the instruction to embody or contain both elements with reference to slight negligence of the plaintiff or negligence less than gross on the part of the defendant. The instruction in the instant case does not contain or embody any reference to negligence less than gross on the part of the defendant. The omission of the phrase above set forth in instruction No. 7, under the authorities above cited, constitutes prejudicial error.

The defendant predicates error on the giving of instruction No. 13 by the trial court, which is in part as follows: "In determining the amount of plaintiff's recovery, in the event you find for the plaintiff, you will consider the nature and extent of the injuries suffered by the plaintiff and whether such injuries are permanent, the pain endured by him, if any, as the result of such injuries, and the expenses incurred for hospitalization, medical care and drugs and the fair and reasonable cost of repairs to plaintiff's vehicle. * * * In determining the damages the plaintiff may be entitled to for his physical pain and suffering, it is not necessary that any witness should have expressed an opinion thereon. The law has no standard for compensating for physical pain and suffering. It is left to the cound (sic) discretion of the jury upon consideration of all the evidence in the case, but such discretion is not to be exercised in an arbitrary manner and you have no right to award anything in the nature of punishment."

The defendant asserts that nowhere in the instruction

did the trial court indicate to the jury that damages for permanent injuries cannot be based upon speculation, probability, or uncertainty, but must be based upon competent evidence of permanent damages clearly shown, or reasonably certain as a proximate result of the injury. With reference to the statement as to speculation, probability, or uncertainty, while such language may be found in instructions on the measure of damages, its omission is ordinarily not considered prejudicial error.

The defendant asserts that paragraphs VI and VII of the plaintiff's petition contain allegations of damages with reference to past and future disability and lost profits; and that on the trial of the case the trial court sustained objections on the part of the defendant to offers made by the plaintiff of amounts of money made by the plaintiff during the months of April, May, June, and July 1960, then allowed the plaintiff, over objection, to introduce testimony of wages paid a substitute driver during the same months. Although the plaintiff stated that he was still making his living in the trucking business, the trial court allowed the plaintiff's son to testify, over objection by the defendant, that a full-time operator in the trucking business draws in the neighborhood of $4,500 to $6,000 a year, and would make a minimum wage of $400 a month. The defendant asserts that such evidence raised the issue of the loss of future earnings on the part of the plaintiff, and that it was the duty of the trial court to instruct the jury as to the proper basis upon which damages were to be estimated. The following are applicable.

"It is always the duty of the court to instruct the jury as to the proper basis upon which damages are to be estimated. The jury should be fully and fairly informed as to the various items or elements of damage which they should take into consideration in arriving at their verdict, otherwise the jury may be confused and misled." Kroeger v. Safranek, 161 Neb. 182, 72 N.

W. 2d 831. See, also, Linch v. Hartford Fire Ins. Co., 138 Neb. 110, 292 N. W. 27, 129 A. L. R. 1063; Borcherding v. Eklund, 156 Neb. 196, 55 N. W. 2d 643.

In Singles v. Union P. R. R. Co., 173 Neb. 91, 112 N. W. 2d 752, this court said: "In an action for damages it is the duty of the court to instruct the jury as to the proper measure of recovery. The tendering of a proper instruction is not a condition precedent to the assignment of an erroneous instruction on the measure of damages."

From a review of the pleadings and the evidence, we conclude that the trial court erred in not giving a proper instruction on the measure of damages.

The plaintiff filed an offer of remittitur in this court stating that the plaintiff failed in proof of special damages, having had admitted by the court for special damages only the sum of $2,483.12; and that the verdict of the jury exceeded such damages as prayed and proven by the amount of $2,155.38, which sum the plaintiff offered voluntarily as a remittitur in this court.

The verdict of the jury in the instant case was in the amount of $24,638.50. The plaintiff's petition prayed for damages in the amount of $24,638.56. The verdict of the jury was 6 cents less than the amount prayed for by the plaintiff in his petition.

In Peacock v. J. L. Brandeis & Sons, 157 Neb. 514, 60 N. W. 2d 643, this court concluded that if there was no method by which a court could rationally ascertain the extent of the excess of a verdict, a remittitur could not be required, for the reason that under such circumstances a remittitur was nothing more than a substitution of the judgment of the court for that of the jury. This principle has been adopted and followed consistently by this court at least since 1943.

In the instant case this court cannot rationally ascertain the extent of excess, therefore, the remittitur offered by the plaintiff should be rejected.

Attention will be given only to the contention that

the verdict and judgment should be vacated on the ground that the verdict appears to be the result of passion and prejudice.

"It is a well-established principle of law that where a verdict in a personal injury case is excessive and that it appears to have been returned under the influence of passion and prejudice rather than upon the facts or that the jury misapplied the law, it is the duty of this court to set the verdict aside and grant a new trial." Peacock v. J. L. Brandeis & Sons, *supra.*

There is considerable evidence in the record relating to personal injuries sustained by the plaintiff, and there is a conflict in the evidence with reference to the extent of such injuries which we deem unnecessary to discuss in the light of our conclusion.

For the reasons given in this opinion, we conclude that the trial court did not commit prejudicial error in granting a new trial. The judgment of the trial court is affirmed.

AFFIRMED.