CARL BASS ET AL., APPELLEES, V. BOETEL & CO., A NEBRASKA CORPORATION, ET AL., APPELLANTS.

217 N. W. 2d 804

Filed May 2, 1974. No. 39112.

Cassem, Tierney, Adams & Henatsch and Theodore J. Stouffer, for appellants.

Frank Meares, for appellees.

Heard before SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.

Plaintiffs, dispossessed tenants of business premises at Rockbrook Center in Omaha, Nebraska, sued their landlord and the latter's agent to recover damages. Admitting default in payment of rents, they alleged that defendants, by the use of self-help, removed and detained certain personal property belonging to plaintiffs. A jury returned a verdict of $12,000 for plaintiffs, and defendants appeal. We reverse.

On September 24, 1968, plaintiffs entered into a written lease of the premises with defendants' predecessor in interest. Rent was payable monthly at the rate of $400 for a period of 3 years. On April 20, 1971, the Rockbrook Center area was acquired by defendants. The transaction included an assignment of one-third of the April rent.

Carl Bass, one of the plaintiffs, operated a billiard parlor on the premises. His business was seasonal, greater in the winter than in the summer. In 1970, he was unable to pay rent to defendants' predecessor for a period of 3 months, but was permitted to make up the payments during the following 3 months. At the time of the transfer of the premises to defendants, Bass had not paid the April rent. He paid no rent to defendants. As of June 1, 1971, he was indebted to them for the rent from April 21, 1971. This is the subject of a counterclaim. Defendants were awarded a judgment of $600 against the plaintiffs. No cross-appeal was taken so this judgment is not in controversy.

When Bass attempted to open for business on June 1, 1971, he found defendants had changed the outside locks on the billiard parlor. He went to their office to discuss the matter but was refused a key. He sub-

sequently hired a locksmith, had the locks changed, and went in to resume business. When the locksmith opened the door, the alarm went off and the security patrol showed up and asked for his identification. Shortly thereafter representatives of defendants appeared and told Bass he could no longer occupy the premises. He stayed in the premises a short while and then sought legal advice. When he left he removed his books, money from the cash register, some standing ashtrays, and a case for pool cues from the premises. When he returned to the premises the locks had again been changed, and he could not reenter. Subsequently he learned that the remainder of his equipment, with the exception of the carpeting, had been removed from the premises.

Bass was never given a written notice to quit as required by statute, nor served with legal process. Defendants removed the personal property claimed by Bass from the billiard parlor. They subsequently gave his attorney an inventory list. The property was placed in defendants' warehouse for storage pending the outcome of this litigation. The premises were relet to another tenant.

The pool and snooker tables were subject to a mortgage in favor of the seller, a corporation represented by Al Karschner. A balance of approximately $3,000 remained unpaid on this mortgage. After the lockout defendants permitted Karschner to remove the tables. Bass assented to their sale, in consideration of the discharge of the debt. The mortgagee sold the tables for $5,665, but Bass received nothing from the proceeds of the sale.

Defendants assert they possessed the right to use self-help as a matter of law; the evidence was insufficient to sustain a finding on the facts or amount of damages; erroneous exclusion of the issue of abandonment; and instructional error relating to damages.

The lease asserted ownership of the landlord, de-

fendants' predecessor, in the tenant's fixtures, except movable office fixtures and trade fixtures. In the event of default in payment of rent, the lease provided as follows: "* * * the Lessor may * * * without demand * * * or notice * * * at once declare this lease terminated, and the Lessor may re-enter said premises without any formal notice or demand and hold and enjoy the same thenceforth as if these presents had not been made, * * *."

The lease also provided: "If the Lessee shall not promptly remove all his property * * * whenever the Lessor shall become entitled to * * * possession * * * as herein agreed, the Lessor may, without notice, remove the same * * * in any manner * * *, or if the Lessee shall at any time vacate or abandon said premises, and leave any * * * chattels * * * for a period of ten days after such vacation or abandonment, or after the termination of this lease in any manner * * * then the Lessor shall have the right to sell * * * said * * * chattels * * * without * * * notice to the Lessee, or any notice of sale, all notices required by statute or otherwise being hereby expressly waived, * * *. * * * all * * * chattels, fixtures and other personal property belonging to * * * Lessee, which are, or may be put into the said leased premises during said term, whether exempt or not from sale under execution or attachment * * *, shall at all times be bound with a first lien in favor of * * * Lessor, and shall be chargeable for all rent * * * which * * * lien may be enforced in like manner as a chattel mortgage, or in any other manner afforded by law."

The lease also provided that personal property was at the risk of plaintiffs only that "* * * the Lessor shall not be * * * liable for any damage * * * caused in any * * * manner whatsoever."

Plaintiffs' second amended petition pleaded two causes of action. The first alleged breach of quiet enjoyment

and loss of financial and business standing as well as public ridicule and ignominy as a result of being locked out of the business premises. The second cause of action alleged the wrongful taking and detention of plaintiffs' personal property.

Defendants argue that wrongful eviction and abandonment were issues of law and that by the terms of the lease they were given the right to take possession of the premises and the personal property. The law on forcible entry and detainer has long been otherwise.

In Myers v. Koenig (1877), 5 Neb. 419, this court stated: "One great object of the forcible entry act is to prevent even rightful owners from taking the law into their own hands and attempting to recover by violence, what remedial powers of a court would give them in a peaceful mode."

In Watkins v. Dodson (1955), 159 Neb. 745, 68 N. W. 2d 508, after quoting the above language, this court said: "It was the purpose of the statute relating to forcible entry and detainer to prevent parties to a litigable controversy like the present from taking the law into their own hands. The issue was not ownership or title but 'lawful and peaceable entry.'

"In addition thereto, our statutes, sections 27-1401 to 27-1417, R. R. S. 1943, govern the matter of forcible entry and detainer. Section 27-1404, R. R. S. 1943, provides for the notice to quit and that it shall be served at least 3 days before commencing the action. This notice is a condition precedent to bringing the action of forcible entry and detainer, and is not sufficient in and of itself to permit entry by the person claiming the right of possession to the land. Other steps in conformity with the above-cited statute must be taken to dispossess a person claimed to be unlawfully detaining the premises."

To accept defendants' argument would scuttle our forcible entry and detainer statute. Self-help, relating

to the repossession of real estate, has long been contrary to the public policy of Nebraska and is not to be condoned. The lockout herein was unlawful. The right of a landlord legally entitled to possession to dispossess a tenant without legal process is the subject of an annotation in 6 A. L. R. 3d 177. At page 186, we find the following statement: "An increasing number of jurisdictions uphold what seems to be the modern doctrine that a landlord otherwise entitled to possession must, on the refusal of the tenant to surrender the leased premises, resort to the remedy given by law to secure it; otherwise he would be liable in damages for using force or deception to regain possession."

Plaintiffs were in lawful possession of the premises even though they had failed to make rental payments as specified by the lease. The fact that they were in default gave defendants the right to declare a forfeiture and to recover the leased premises by legal means. Instead, they resorted to self-help and are liable for the consequences.

Plaintiffs premise their argument on the assumption that damages for breach of quiet enjoyment by forcible repossession of the premises was submitted to the jury. This is a portion of the case embraced within the first cause of action, which was withdrawn from the consideration of the jury by the trial court. Plaintiffs have not cross-appealed, so that determination has become final. The above discussion is material herein in that it shows the dispossession was unlawful.

The only issue submitted to the jury was the wrongful taking and detention of plaintiffs' personal property as the result of their being unlawfully and forcibly dispossessed of the leased premises. Defendants' unlawful seizure of the property of plaintiffs could not be justified on the ground that rent was due and owing, as defendants might have proceeded legally to enforce whatever legal or equitable claims they might have had.

Instead, defendants saw fit to wrongfully and unlawfully seize and detain plaintiffs' property. The trial court properly instructed the jury that a person having a lien upon the property of another must enforce that lien by proper legal action rather than by force.

No specific damage instruction was submitted by the court. The jury was merely advised to determine the nature, extent, and amount of the damages sustained by plaintiffs as a result of the forcible taking and detention of their personal property by defendants.

Plaintiffs' second cause of action alleges the value of plaintiffs' personal property and its loss of use to be $14,200. No sufficient evidence was adduced to sustain this figure. Bass testified it cost him $9,000 to resume business after a 1969 fire. There was also testimony that he spent $2,000 for carpeting after the fire, with no explanation as to whether this amount is included in the $9,000 figure. Over objection, Bass was permitted to testify that he estimated his business was worth $15,000. Plaintiffs' second cause of action was not for the value of the business but of the property and the loss of its use. Even if proper, there was no explanation as to how this figure could be justified. It is conceded that the pool tables were repossessed by the mortgagee after plaintiffs were dispossessed. Bass, as specified above, also removed some of the personal property used in the business after the locks were changed on the door.

There were seven pinball machines on the premises, along with a number of other vending machines owned by a billiard supply firm. Plaintiffs were deprived of the use of these machines as the result of defendants' action. Plaintiffs' net income from the machines (their share of the gross income) was $75 to $150 per week. This equipment was removed a short time after the lockout, but the evidence tends to show that in the

absence of the lockout this equipment would not have been repossessed.

Exhibit 1 is an inventory of the property removed from the premises and detained by defendants. Bass concedes this covers all the personal property except the carpeting which is still on the premises and being used by the new tenant. No testimony was adduced as to the market value of the carpeting or the personal property described in exhibit 1 as of the date of its forcible detention. Testimony of the original cost did not establish the fair market value of the property as of June 1, 1971.

As suggested before, there was no damage instruction. It is always the duty of the court to instruct the jury as to the proper basis upon which damages are to be estimated. The jury should be fully and fairly informed as to the various items or elements of damage which it should take into consideration in arriving at its verdict. Otherwise, the jury may be confused and misled. Main v. Sorgenfrei (1962), 174 Neb. 523, 118 N. W. 2d 648.

Defendants moved for a directed verdict at the close of plaintiffs' evidence. This motion was properly denied because, on this record, plaintiffs could clearly have recovered for the loss of revenue from the vending machines. However, the jury returned a verdict for $12,000. It is evident that there was not proper and sufficient evidence in the record to support such an award even if the jury had been properly instructed. This verdict is obviously the result of speculation and conjecture and must be set aside.

Defendants complain of the refusal of the court to submit their defense of abandonment. It is patent that the defense of abandonment is frivolous and the tendered instruction was properly refused.

For the reasons given, the judgment is reversed and

the cause remanded to the District Court for a new trial in conformity with this opinion.

REVERSED AND REMANDED.

CLINTON, J., dissenting.

I dissent. The case should be not only reversed, but also dismissed. The plaintiffs failed to adduce evidence from which the jury could determine the value of the converted property without indulging in speculation and conjecture. Therefore the defendants' motion for a directed verdict should have been granted. The effect of the majority opinion is to allow a new trial to the plaintiffs so that they may remedy their own deficiencies of proof. This constitutes a departure from well-established procedural rules, the substance of which is that a party who fails to obtain a verdict (or against whom a verdict should have been directed) because of failure of proof of some element of his cause of action, including the element of damages, is not entitled to a new trial so that he may have another shot at it.

The cause of action submitted to the jury was one for the conversion of personal property. The pertinent portion of this second cause of action as it appears in the plaintiffs' petition is as follows: "That the defendants continue to hold and detain from plaintiffs the personal property and refuse and have refused to give it up, and have disposed of the same so that the fair and reasonable value of the property taken and converted to the use of defendant, including loss of use to the plaintiffs, is the sum of $14,200.00."

The majority opinion adequately shows that there was no evidence from which the jury could have determined the value of the property converted or the value of its use.

Before discussing the applicable Nebraska law, I wish to set forth the following summary of general principles based upon text authority which are or should be familiar to every judge and lawyer. If evidence is legally

insufficient to prove one of the elements of a cause of action, the verdict should be directed. 88 C. J. S., Trial, § 252, p. 595, § 258, p. 674. The cause should not be remanded for the purpose of a new trial in order to give an opportunity to introduce evidence which should have been offered at the original trial. 5B C. J. S., Appeal & Error, § 1941, p. 486. The ordinary measure of damages for the loss of personal property is the market value of the property at the time and place of the loss. 25 C. J. S., Damages, § 82, p. 904. Or if there is no market, then its actual value. 89 C. J. S., Trover & Conversion, § 98, p. 591. The value of the property should be alleged. 89 C. J. S., Trover & Conversion, § 98, p. 591. If there are special damages they must be pleaded and a proper instruction given with reference thereto. 89 C. J. S., Trover & Conversion, § 156, p. 636. There must be competent evidence of value. 25A C. J. S., Damages, § 157, p. 53. The court must instruct on the elements, measure, and assessment of damages. 25A C. J. S., Damages, § 178, p. 191.

We must bear in mind in this case that the defendants against whom the jury found contend that they were entitled to a directed verdict. The situation is the same therefore as if the plaintiffs-appellees had an unfavorable verdict and appealed because of error and the present appellants were countering with the claim that the error makes no difference because they were entitled to a directed verdict without reference to the claimed error.

The following is the pertinent Nebraska law. In Midlands Transp. Co. v. Apple Lines, Inc., 188 Neb. 435, 197 N. W. 2d 646, we said: "Summarizing these authorities the more precise question before us is not whether there is any competent evidence in the record to show that the damages are capable of mathematically exact measurement, but whether there is sufficient evidence and data to enable the trier of fact, the jury, with a

reasonable degree of certainty and exactness to estimate the actual damages. . . .

"It is true that Apple was prevented from the proper presentation of its case on damages due to the fact that the relevant documents and evidence were lost when fire destroyed the company office building. This explains but obviously does not excuse Apple's failure to sustain its burden of proof on the issue of damages. It is the duty of the district court to refrain from submitting to a jury the issue of damages when the evidence is such that it cannot determine such issue except by indulging in speculation and conjecture. Johnsen v. Taylor, 169 Neb. 280, 99 N. W. 2d 254. To submit the issue of damages in this case to the jury would be to 'leave the jury to rove without guide or compass through the limitless fields of conjecture and speculation.' See McGinnis v. Hardgrove, supra. The determination of the trial court not to submit Apple's cross-petition to the jury is sustained on this ground alone."

Wittenberg v. Mollyneaux, 55 Neb. 429, 75 N. W. 835, was an action for damages for breach of contract not to compete. We there said: "There was not made, however, proof to the requisite degree of certainty, although plaintiff almost succeeded in that effort. It was made to appear that prior to the opening of Shope's hotel plaintiff's was the only hotel in town. The extent of his receipts was shown. It was then shown that the amount of business did not change. This was by proving that the number of travelers entering the town, and other conditions, remained practically the same. Then the receipts of the plaintiff's hotel, after the opening of Shope's, were shown, and there was evidence in addition that the receipts of the two hotels were about the same as plaintiff's receipts had been. But one important element was lacking. There was no proof as to expenses under the first condition. We

may surmise that in such a business certain elements of expense remain constant, but that others must vary according to the volume of business. It is said in the briefs that it was shown that the expense remained the same, but counsel certainly mistake the record. The only evidence relating to expenses is found in plaintiff's testimony, where, in answer to a question as to how his 'trade ran' after Shope had opened the other hotel, he said: 'My trade ran about even with my expenses, about $11 a day. It just took all I could get to make my expenses.' This tends to prove that, after Shope opened, plaintiff's business was not profitable, but for all that appears his expenses before his business was reduced were so much greater than afterwards that the same condition then existed. In the absence of evidence on that point proof of receipts alone would fail to establish the loss of profits to any degree of certainty." Judgment for the plaintiff was reversed.

Neill v. McGinn, 175 Neb. 369, 122 N. W. 2d 65, was an action to recover for damages to an automobile. The jury found for the defendant. The trial court sustained a motion of the plaintiff for a new trial and the defendant appealed. On the issue of proof of damages, we said: "The plaintiff, who first testified, attempted to prove the value of her automobile before the taking and the salvage value thereafter. On direct examination she was permitted to testify, over objections that the questions were irrelevant and immaterial, that she purchased it from Rosen-Novak and paid $2,738 for it and received $150 for the salvage. Over like objection she said she was without transportation facilities for 3 months and paid $100 a month for taxicab services in that period.

"Evidence of the purchase price of the automobile, or the sale price of the salvage, or the expenses of transportation while deprived of its use in no way tended to prove the proper measure of plaintiff's damage in

this cause. In Lund v. Holbrook, 153. Neb. 706, 46 N. W. 2d 130, this court held: 'In an action for damages to an automobile, where the automobile cannot be placed in substantially as good condition as it was before the injury, the measure of damages is the difference between its reasonable market value immediately before and immediately after the accident. The injured party is not permitted to recover in addition thereto damages for loss of use.' It is obvious that neither the purchase price nor the amount received as salvage was material to show the reasonable market value of the automobile before and after the injury." We reversed and ordered judgment entered on the verdict for the defendant.

Section 25-1315.03, R. R. S. 1943, reads in part as follows: "The Supreme Court on appeal from an order granting a new trial, or upon a review of an order denying a new trial in the action in which such motion was made, *or on appeal from the judgment*, may order and direct judgment to be entered in favor of the party who was entitled to such judgment." (Emphasis supplied.)

In Wax v. Co-Operative Refinery Assn., 154 Neb. 42, 46 N. W. 2d 769, the question before the court on appeal was the sufficiency of evidence to prove proximate cause. The plaintiff had a verdict below. The defendant had moved to dismiss for insufficiency of the evidence. The court denied and submitted the case to the jury. We determined the evidence was insufficient to establish proximate cause, and said: "It is, true that a motion for directed verdict was not made but a motion for dismissal was made on the ground that the evidence did not sustain a cause of action. This brings the case within section 25-1315.02, R. R. S. 1943.

"A motion to dismiss on the ground that the evidence does not sustain a cause of action for all practical purposes is the same as a motion for directed verdict and this court has uniformly so treated it. Meyer

v. Platt, 137 Neb. 714, 291 N. W. 86; Robinson v. Central Neb. Public Power & Irrigation District, 146 Neb. 534, 20 N. W. 2d 509; Fentress v. Co-Operative Refinery Assn., supra; Roby v. Auker, 149 Neb. 734, 32 N. W. 2d 491; Armer v. Omaha & C. B. St. Ry. Co., 151 Neb. 431, 37 N. W. 2d 607.

"We conclude under this reasoning that the motion to dismiss should have been sustained the same as if a motion for a directed verdict had been made agreeable to the terms of section 25-1315.02, R. R. S. 1943.

"It follows that the court did not err in setting aside the verdict but it did err in granting the defendant a new trial.

"To the extent of the error the order of the district court is reversed. It is otherwise affirmed.

"Pursuant therefore to section 25-1315.03, R. R. S. 1943, which provides in part as follows: 'The Supreme Court on appeal from an order granting a new trial, or upon a review of an order denying a new trial in the action in which such motion was made, or on appeal from the judgment, may order and direct judgment to be entered in favor of the party who was entitled to such judgment,' this cause is remanded with directions to render judgment notwithstanding the verdict in favor of the defendant."

In Johnsen v. Taylor, 169 Neb. 280, 99 N. W. 2d 254, we said: "Restatement, Torts, § 912, p. 574, states: 'A person to whom another has tortiously caused harm is entitled to compensatory damages therefor if, but only if, he establishes by proof the extent of such harm and the amount of money representing adequate compensation with such certainty as the nature of the tort and the circumstances permit.' In Comment a appears the following: 'Where a person seeks to recover damages for a particular harm which he claims has resulted to his person or to a tangible thing belonging to him, he has the burden of proving that the other has invaded

a legally protected interest of his, that he has suffered such harm and that the act of the other was a legal cause of such harm. Thus where a person has been wounded by another and subsequently blood poisoning develops in any portion of his body, he has the burden of showing that it is more probable than not that the initial wrongful contact was a substantial factor in producing it. * * * In all of such cases the recovery of damages for a particular harm is dependent upon proof that such harm occurred as the result of the tortious conduct and normally the plaintiff can recover damages therefor only by proving this with the same degree of certainty as that required in proving the existence of the cause of action.' See, also, Wylie v. Czapla, 168 Neb. 646, 97 N. W. 2d 255; 15 Am. Jur., Damages, § 329, p. 768.

"The district court is required to refrain from submitting to a jury the matter of damages and to decide the case as a matter of law if the evidence of claimant fails to establish that he has sustained an injury or fails to establish the extent of the injury he claims was inflicted upon him so that a jury cannot determine damages except by indulging in speculation and conjecture."

In Laurinat v. Giery, 157 Neb. 681, 61 N. W. 2d 251, we held that there was a failure of proof of negligence. We said: "The trial court erred in overruling defendant's motion for an instructed verdict at the close of plaintiff's case and in denying a judgment notwithstanding the verdict. Pursuant to section 25-1315.03, R. R. S. 1943, the judgment of the district court is reversed and the cause remanded with directions to enter judgment for the defendant. Yanney v. Nemer, 154 Neb. 188, 47 N. W. 2d 368."

Patrick v. Union Central Life Ins. Co., 150 Neb. 201, 33 N. W. 2d 537, was an action on a life insurance policy. The basis of the action was the presumption of death of the insured arising from an absence for a

period of 7 years. The defendant moved for a directed verdict. It was denied. The jury verdict for the plaintiff beneficiary was rendered. The defendant moved for judgment notwithstanding the verdict. This motion was sustained. The plaintiff appealed. We reversed and ordered judgment entered on the verdict.

This court has on some occasions on apparent inadvertence failed to follow the principles cited. Such cases are Wylie v. Czapla, 168 Neb. 646, 97 N. W. 2d 255; Patrick v. City of Bellevue, 164 Neb. 196, 82 N. W. 2d 274. The error of those cases should not be perpetuated and affirmed.

Failure to prove damages by competent evidence should be treated the same as any other failure of proof. It seems clear to me there was no proof of the market value of the property, or its actual value, or the value of its use, and that the verdict could only be the result of conjecture or acceptance of evidence not competent for the purpose.

I would reverse and dismiss.

NEWTON, J., dissenting.

I respectfully dissent. Under existing Nebraska law, a landlord cannot evict a tenant by force or artifice even though the landlord is entitled to possession. See, Anderson v. Carlson, 86 Neb. 126, 125 N. W. 157; Miller v. Maust, 128 Neb. 453, 259 N. W. 181; Barnes v. Davitt, 160 Neb. 595, 71 N. W. 2d 107. These are all cases in forcible entry and detainer where the only issue was the right of possession. In such cases damages were not an issue. Furthermore, in none of these cases was a lease involved which contained a provision for reentry on breach. These cases represent an exercise in futility. In each instance the tenant, who wrongfully held possession in the first place, was returned to possession. This simply meant that the landlord would have to bring a second action in forcible entry and detainer to obtain possession from a defaulting tenant or tres-

passer. I believe it inadvisable to extend our rule to cases where the lease contract authorizes reentry on breach or termination of the lease. I favor following the weight of authority as outlined in Annotation, 6 A. L. R. 3d 194.

The right of a landlord to reenter for default in payment of rent or a wrongful holding over should be permitted where the lease provides for reentry and it can be accomplished without violence. This is similar to the right of a conditional sale vendor to take possession of the security on default by peaceful means. See § 9-503, U. C. C.

How can a rule such as is advocated in the majority opinion be justified? It is said that it prevents violence and therefore is required by public policy. This is untrue as the rule I have proposed, like that dealing with the repossession of a conditional sales contract security interest, authorizes only peaceful repossession. Contractual rights should not be nullified without good reason.

On the question of whether a party not entitled to possession of realty who is ejected by force or artifice may recover damages, there is a split in the authorities. See Annotation, 6 A. L. R. 3d 210 and 214. There is not a single Nebraska case permitting such recovery. The decisions seem to indicate approval of Ish v. Marsh, 1 Neb. (Unoff.) 864, 96 N. W. 58, which approved an instruction that one not entitled to possession cannot recover damages when forcibly ejected except in the event due care was not used in removing his property.

Shutt v. Lockner, 77 Neb. 397, 109 N. W. 383, holds that a tenant wrongfully evicted may recover the rental value of the property for the unexpired term, less the amount of rent reserved by the lease. To the same effect is Jarman v. Sexton, 130 Neb. 453, 264 N. W. 305, but adds that in a proper case special damages may be awarded. Kenney v. Braun, 113 Neb. 12, 201 N. W.

641, follows the same rule and permits recovery of profits lost from the operation of a theatre. The same rules are followed in Dinkel v. Hagedorn, 156 Neb. 419, 56 N. W. 2d 464. In none of these cases was the party evicted wrongfully in possession as a trespasser or defaulting tenant.

In the absence of a willful destruction of the evicted party's property or a physical assault, I would deny recovery. This is particularly true in cases where the lease provides that the landlord shall have a lien on the tenant's property on the demised premises to secure accrued rentals. In 49 Am. Jur. 2d, Landlord and Tenant, § 677, p. 642, it is stated: "It is competent for the parties to a lease to stipulate that the landlord shall have a lien on the crops or the personal property of the tenant which may be brought upon the leased premises, which, even if invalid at common law, will be given effect in equity."

BOSLAUGH, J., concurring.

With respect to the matter of self-help relating to the repossession of real estate, the following statement from the opinion of Mr. Justice Marshall in Pernell v. Southall Realty, decided April 24, 1974 (42 Law Week 4595), seems appropriate: "Some delay, of course, is inherent in any fair-minded system of justice. A landlord-tenant dispute, like any other lawsuit, cannot be resolved with due process of law unless both parties have had a fair opportunity to present their cases. Our courts were never intended to serve as rubber stamps for landlords seeking to evict their tenants, but rather to see that justice be done before a man is evicted from his home."