THOMAS C. POLLEY ET AL., APPELLANTS, V. HAL G. SHOEMAKER ET AL., APPELLEES.

266 N. W. 2d 222

Filed May 31, 1978. No. 41547.

Frank Meares, for appellants.

Wallace Hopkins and James E. McCarthy of Marks, Clare, Hopkins & Rauth, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BRODKEY, J.

This is an action brought by Thomas C. and Alice Polley, against Hal G. and Carol J. Shoemaker to recover damages for the alleged conversion of personal property and the breach of the right to peaceable and quiet enjoyment of leased premises. At the close of plaintiffs' evidence, the District Court sustained defendants' motion for a directed verdict, and dismissed plaintiffs' petition. Plaintiffs have appealed, contending that the trial court erred in sustaining defendants' motion for a directed verdict and in rejecting plaintiffs' offer of proof concerning damages for conversion of property. We affirm the judgment of the District Court.

On May 1, 1975, plaintiffs leased business property on Farnam Street, Omaha, Nebraska, from a realty company for a term of 3 years. Plaintiffs used the premises for the operation of a restaurant and lounge, and had been continuously leasing the property since 1949. On April 12, 1976, a fire severely damaged the leased premises, making them unfit for continued operation of plaintiffs' restaurant and lounge. Plaintiffs discontinued paying rent after the fire, as permitted by their lease, but did not abandon their leasehold.

The owner of the building then sold it to the defendants, and assigned plaintiffs' lease to the defendants on May 13, 1976. The original owner, at the request of plaintiffs, served them with a notice to vacate their leasehold on or before November 1, 1976.

The evidence and plaintiffs' testimony indicate that the notice was received by plaintiffs on April 30, 1976. The notice to vacate was in accordance with a provision of the lease which provided that the lessor had the right to terminate the lease upon 6 months notice if he intended to sell the building.

Relations between plaintiffs and the defendants were not entirely harmonious subsequent to the fire. On two occasions in June 1976, plaintiffs were requested to remove spoiled food from the restaurant because it was causing a health hazard. Plaintiffs apparently removed some of their property from the premises, but most of it, mainly trade fixtures, remained after the fire. In August, the parties entered into an agreement with respect to the lounge portion of the premises, and defendants paid plaintiffs $1,500 to vacate the lounge portion before the leasehold expired on November 1, 1976. No agreement was made with respect to the restaurant portion of the premises. Plaintiffs did vacate the lounge and defendants began to renovate it.

On October 6, 1976, plaintiffs were advised that defendants had changed the locks on all doors to the premises. In a letter to plaintiffs, defendants stated: "In an effort to preserve the building and to prevent further waste and deterioration, the locks on all doors to the premises are being changed. You may have access to the building during the daylight hours only and any further removal of property must be done under supervision of the new owner, * * *." The letter also advised the plaintiffs to return an item of property removed from the building, and to cease any unauthorized removal of property from the premises. The defendants refused to give the plaintiffs keys for the new locks. Plaintiffs filed this action 2 days later, alleging that the defendants had converted their personal property by changing the locks, and had breached their right to quiet enjoyment of their leasehold.

The evidence at trial indicated that plaintiffs did not return to the premises after October 6, 1976, nor did they make any attempt to remove their property from the building. There was no evidence that defendants denied plaintiffs access to the building during daylight hours, and plaintiffs admitted that they were never told they could not take their property. On December 10, 1976, defendants wrote the plaintiffs, stating that they were "once more requesting" that plaintiffs remove the fixtures from the restaurant, and that the fixtures would be removed and placed in storage if the plaintiffs did not respond. Plaintiffs did not reply, and apparently the fixtures were placed in storage on January 1, 1977. By that time, plaintiffs had opened another restaurant in a new location.

We first discuss plaintiffs' claim that they are entitled to damages for breach of a covenant of quiet enjoyment of the leased premises. The evidence presented in this case was clearly sufficient to permit a finding of unlawful interference with the peaceful use of the premises since defendants admitted changing the locks on the building before the lease expired and refusing to give plaintiffs a key. See Bass v. Boetel & Co., 191 Neb. 733, 217 N. W. 2d 804 (1974). In Bass we unequivocally stated that landlords are not entitled to recover leased premises by resort to self-help, but must use the legal means provided for that purpose. Although the "lockout" in this case was only partial, it nevertheless constituted an infringement of plaintiffs' right to peaceful and quiet enjoyment of the leased premises.

Although the evidence presented by plaintiffs was sufficient to permit a finding of breach of a covenant of quiet enjoyment, they did not produce competent evidence which would sustain an award of damages therefor. The partial lockout occurred approximately 3 weeks before the lease expired. At that time, it was apparent that plaintiffs would not re-

open their business at the location for the remainder of the lease. Plaintiffs admitted that the premises were of no significant use to them after the fire and after it became apparent that the lease would be terminated. Plaintiffs did not demonstrate any monetary loss due to the partial lockout, nor any compensable injury. Therefore, the District Court properly directed a verdict in favor of the defendants on this cause of action since plaintiffs failed in their proof of damages.

Plaintiffs' second cause of action was based upon a conversion of the trade fixtures and property left in the restaurant. The general definition of "conversion," long accepted in this and other jurisdictions, is that conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein. See Jessen v. Blackard, 159 Neb. 103, 65 N. W. 2d 345 (1954). The "tort of conversion has been confined to those major interferences with the chattel, or with the plaintiff's rights in it, which are so serious, and so important, as to justify the forced judicial sale to the defendant which is the distinguishing feature of the action." Prosser, Law of Torts, § 15, at pp. 80, 81 (4th Ed., 1972). In Restatement, Torts 2d, § 222A, 431, it is stated: "(1) Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Therefore it can be seen that not all exercise of dominion over or interferences with the use of chattels constitute conversion.

Plaintiffs rely on Bass v. Boetel & Co., *supra*, in support of their claim that the evidence in this case would support a finding of conversion. In Bass a tenant defaulted on rental payments, and the landlord *completely* dispossessed the tenant from the premises by changing the locks on the building. The

tenant's property was removed from the premises, and some of the property was delivered to a creditor of the tenant. The remainder of the property was placed in storage. The facts in Bass indicate that although the tenant was given an inventory list of the stored property, he was not given the opportunity to take possession of it. In that case, the landlord was apparently asserting a claim to the property on the ground that the tenant's rental payments were due and owing, as the lease in question provided for a lien on the tenant's property for unpaid rent in favor of the landlord.

In Bass we concluded that the seizure and detention of the tenants' property was unlawful, and that a person allegedly having a lien upon the property of another must enforce that lien by taking proper legal action rather than employing self-help. Although this court concluded that there had been a conversion, the cause was remanded for further proceedings on the issue of damages.

The facts in the instant case are significantly different from those in Bass. Defendants in this case were not asserting any interest in the plaintiffs' property when they denied plaintiffs access to the building during nighttime hours. At no time did they prohibit plaintiffs from removing the property, and plaintiffs admittedly made no request or attempt to take possession of the property. Moreover, defendants did not remove the property during the term of the lease.

After the lease expired, defendants requested in writing that plaintiffs remove the property. Plaintiffs made no attempt to do so. Two months after the lease expired, the property was stored by the defendants, but again there is no evidence that defendants were asserting a right in the property, or that plaintiffs were denied access to it. In fact, the record demonstrates that defendants desired the plaintiffs to take possession of their property.

On these facts, we believe the trial court was correct in concluding that the evidence would not support a finding of conversion. Defendants' interference with plaintiffs' property was not an intentional exercise of dominion or control over it which so seriously interfered with plaintiffs' rights to control it that the defendants may justly be required to pay plaintiffs the full value of the chattel. Other courts, on facts analogous to those in this case, have reached the same conclusion. See, Jordan v. Talbot, 55 Cal. 2d 597, 12 Cal. Rptr. 488, 361 P. 2d 20 (1961); Zaslow v. Kroenert, 29 Cal. 2d 541, 176 P. 2d 1 (1946); Fox v. American Propane, Inc., 508 S. W. 2d 426 (Tex. Civ. App., 1974).

We emphasize, however, that the general rule set forth in Bass remains viable. Where a landlord completely dispossesses a tenant of leased premises and denies the tenant access to his property, asserting an interest in that property, an action for conversion will lie.

In view of our conclusion that the trial court did not err in its decision that the evidence did not support a finding of conversion, we need not discuss plaintiffs' assignment that the trial court erred in refusing their offer of proof concerning the value of the property allegedly converted.

The judgment of the District Court is affirmed.

AFFIRMED.