Royce McCRAY, John W. Butcher and
R & J Associates, Inc., Appellants,

v.

Robert E. CARSTENSEN, Individually
and as a Partner of T & C Associates,
and B.J. Trickey, Individually and as a
Partner of T & C Associates, Appellees.

No. 91–1851.

Court of Appeals of Iowa.

Sept. 29, 1992.

Gregory J. Epping of Terpstra, Terpstra
& Epping, Cedar Rapids, for appellants.

Michael McDonough of Moyer & Berg-
man, Cedar Rapids, for appellees.

Considered by DONIELSON, P.J., and
HAYDEN and HABHAB, JJ.

HAYDEN, Judge.

Plaintiffs executed a lease to rent com-
mercial real estate from defendants. The
lease stated the premises were to be used
"only for a bar serving a limited number of
food items." The term of the lease was for
a one-year period beginning on May 1,
1989, and terminating on April 30, 1990.
In a default situation the lease provided
plaintiffs were to receive a ten-day notice
prior to cancellation or forfeiture of the
lease.

Plaintiffs began doing business on May
29, 1989, and continued to do business until
March of 1990. They operated the busi-
ness as a bar which featured seminude
female dancers. During its operation, how-
ever, plaintiffs had problems concerning a
dance permit. In March of 1990 plaintiffs
lost their dance permit. Determining it to
be economically infeasible to continue oper-
ation without the female dancers, plaintiffs
closed their bar. Plaintiffs testified at trial
they continued to apply for permits neces-
sary to reopen the bar.

On several occasions in late March and
the first week of April 1990 defendants
observed plaintiffs' business was not open
during normal operating hours. In addi-
tion, the rent payment was over one month
late, and defendants had received several
requests from utility companies for access
to the premises to shut off services. De-
fendants were also aware of plaintiffs' ina-
bility to obtain a dance permit. During
this same period of time, defendants in-
formed plaintiffs of a rent increase at the
expiration of the lease. Plaintiffs express-
ly rejected renewal of the lease. Plaintiffs'
final application for a dance permit was
also denied in early April. Consequently,
plaintiffs ceased efforts to obtain the per-
mits necessary to reopen the bar.

Defendants took possession of the premises on April 7, 1991. The record shows defendants failed to provide notice of default and changed the locks on the premises. On April 18, 1990, defendants leased the premises to a third party.

Plaintiffs did not return to the premises until mid-April at which time they found the locks had been changed. Plaintiffs then contacted defendants and requested the return of their personal property. This was the only time plaintiffs contacted defendants with regard to the release of their property. Defendants asked them to contact the new tenant and stated there should be no problems with the return of their property. Upon contacting the new tenant, plaintiffs were requested to submit a list of their possessions. The new tenant explained he needed the list to verify ownership because several individuals were claiming rights to property on the premises. At no time did the new tenant refuse to return items to plaintiffs. Plaintiffs never submitted a list, and they never contacted defendants with regard to any problems with the return of their property. On November 19, 1990, however, plaintiffs filed a petition at law alleging conversion of their personal property.

On October 30, 1991, the trial court filed its order in favor of defendants. The trial court rejected plaintiffs argument they were denied return of their property. The trial court concluded the actions of defendants did not constitute conversion. It determined defendants took possession of the premises after plaintiffs had abandoned the premises.

Our scope of review is on assigned error only. Iowa R.App.P. 4.

The issue on appeal is whether the trial court erred in determining defendants did not convert plaintiffs' personal property. We hold the actions of defendants failed to constitute conversion. We affirm the trial court.

■ The Iowa Supreme Court has defined conversion as "the act of wrongful control or dominion over another's personal property in denial of or inconsistent with that person's possessory right to the prop-erty. *Kendall/Hunt Publishing Co. v. Rowe*, 424 N.W.2d 235, 247 (Iowa 1988) (citations omitted). The fact defendants locked plaintiffs out of the premises does not necessarily involve sufficient interference with plaintiffs' personal property to constitute conversion because defendants were willing to allow plaintiffs to access the premises for the purpose of removing their property. *Polley v. Shoemaker*, 201 Neb. 91, 266 N.W.2d 222, 226 (1978) (court holding lockout of tenant three weeks before expiration of lease did not constitute conversion where landlord claimed no interest in property and advised tenant arrangements could be made to remove it during daylight hours); *Schara v. Thiede*, 58 Wis.2d 489, 206 N.W.2d 129, 133 (1973) (court holding lockout did not constitute conversion where landlord willingly unlocked premises to permit tenant to remove property). The following factors should be considered in determining the seriousness of the interference:

(a) the extent and duration of the actor's exercise of dominion or control;

(b) the actor's intent to assert a right in fact inconsistent with the other's right of control;

(c) the actor's good faith;

(d) the extent and duration of the resulting interference with the other's right of control;

(e) the harm done to the chattel;

(f) the inconvenience and expense caused to the other.

*Kendall/Hunt Publishing Co.*, 424 N.W.2d at 247 (quoting Restatement (Second) of Torts § 222A(2) (1965)).

■ The fact defendants failed to provide notice of default does not alone determine whether they converted the property. The issue is whether defendants' actions so seriously interfered with plaintiffs' rights as to require them to pay full value of the property. The following facts support the conclusion defendants are not liable.

Evidence shows plaintiffs contacted defendants only one time to discuss the return of their personal property. Defendants asked plaintiffs to contact the new

tenant and foresaw no problems with the return of the property. The new tenant merely asked plaintiffs to provide a list of their property as proof of ownership prior to turning over the equipment. The period during which the property was in defendants' possession is due to plaintiffs' failure to retrieve it. The record shows plaintiffs failed to provide such a list to the new tenant and never contacted defendants with any complaints about the return of their property. At all times, defendants were willing to release the property and had no intent on denying access to plaintiffs.

■ The good faith of defendants is another consideration in assessing the seriousness of the interference. Restatement (Second) of Torts § 222A(2)(c) (1965). We agree with the trial court conclusion defendants acted in good faith when they took possession of the premises. Defendants did not assert any rights inconsistent with plaintiffs' rights over the personal property. Defendants also acted in good faith through their efforts to relet the premises. Generally, damage mitigation principles apply in conversion actions. *Welke v. City of Davenport*, 309 N.W.2d 450, 453 (Iowa 1981) (citations omitted). Defendants were attempting to mitigate any damages by leasing the premises to a third party.

Finally, we determine the personal property of plaintiffs was not harmed. Evidence shows the items still remain in the building. There is no evidence to show plaintiffs were refused the right to remove their personal property. The new tenant merely requested a list of property in order to establish ownership.

> [O]ne in possession of a chattel who is in reasonable doubt as to the right of a claimant to its immediate possession does not become a converter by making a qualified refusal to surrender the chattel to the claimant for the purpose of affording a reasonable opportunity to inquire into such a right.

Restatement (Second) of Torts § 240(1) (1965). We also note the new tenant is not a party to this conversion action.

Defendants retook possession of the real estate for several reasons. Although the lockout occurred approximately three weeks before the expiration of the lease, it was evident plaintiffs would not reopen their business. The bar had been closed during regular business hours of a tavern for some time, rent was more than a month overdue, and plaintiffs had failed to pay other bills, such as utilities, for which they were responsible under the terms of the lease. In addition, evidence shows plaintiffs ceased their efforts to obtain a dance permit as soon as they learned rent would be increasing at the end of April.

We determine plaintiffs failed to meet their burden showing there was any distinct act of wrongful control exercised over their personal property. Iowa R.App.P. 14(f)(5). Defendants' actions did not rise to the level of conversion. The record shows defendants would have willingly released plaintiffs' property. We conclude defendants never interfered so seriously as to constitute a denial of plaintiffs' right to their personal property. We affirm the trial court.

AFFIRMED.